[Lehman, Durr & Co. v. Greenhut.]

# Lehman, Durr & Co. v. Greenhut.

*Bill in Equity by Creditors, to set aside Conveyances as Fraudulent.*

1. *Misjoinder of complainants.*—When a misjoinder of complainants is apparent on the face of the bill, the objection must be taken by demurrer, and comes too late at the hearing, or on appeal, when it does not materially affect the propriety of the decree.

2. *Conveyance by insolvent debtor to creditor; validity as against other creditors.*—When an insolvent debtor conveys all of his property to one of his creditors, in payment of an existing debt, and the conveyance is assailed by other existing creditors, the *onus* is on the purchasing creditor to establish, by clear and satisfactory evidence, the *bona fides* of his debt, and the payment of an adequate consideration—that is, that there is no material difference between the amount of his debt and the fair and reasonable value of the property conveyed; and when a near relationship exists between him and the debtor, clearer and more convincing proof is required, than when they are strangers.

2. *Same; usury in debt of secured or purchasing creditor.*—Ordinarily, the validity of a conveyance by a debtor, in payment of a debt, can not be assailed by other creditors on the ground of usury; but, when usurious interest is charged and allowed, on a settlement and sale of property in payment of a debt, without any previous agreement to that effect, this is a circumstance to be considered, in connection with the other facts, in determining the validity of the transaction; and if it appears that it was done for the purpose of swelling the debt to an amount not materially less than the value of the property, the transaction is fraudulent.

4. *Same; case at bar.*—In this case, an insolvent partnership having conveyed all of its property to a brother of one of the partners, in payment of a recited indebtedness, under unusual circumstances which render the transaction suspicious—made in haste and secrecy, in the absence of the grantee, and without consultation with him as to the price of the property; the price being fixed by the grantors, and also the amount of the debt, which was fraudulently swelled by the addition of improper items—the conveyance is held fraudulent in law as against other creditors.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 8th December, 1886, by Lehman, Durr & Co., and Goetter, Weil & Co., two partnerships doing business in the city of Montgomery, as creditors of Long & Greenhut, a mercantile partnership lately doing business in Greenville, against the said Long & Greenhut, individually and as partners, and F. Greenhut, who was a brother of one of the partners; and sought to set aside, on the ground of fraud, two conveyances executed by Long &

[Lehman, Durr & Co. v. Greenhut.]

Greenhut to F. Greenhut. On final hearing, on pleadings and proof, the chancellor sustained the conveyances as valid, and dismissed the bill; and his decree is now assigned as error. The opinion states the material facts shown by the evidence.

TOMPKINS & TROY, for appellants.

JOHN GAMBLE, and WATTS & SON, *contra.*

CLOPTON, J.—The appellees insist that the decree should be affirmed, though the chancellor may have erred in his conclusions of fact, on the alleged ground that the bill shows on its face a misjoinder of complainants. This objection, when apparent from the bill, must be taken advantage of by demurrer. It comes too late when taken for the first time at the hearing, and will be disregarded on appeal, if it does not materially affect the propriety of the decree.—*Erwin v. Ferguson,* 5 Ala. 158; *Newhouse v. Miles,* 9 Ala. 460. The objection having been taken for the first time at the hearing, without the interposition of a demurrer, we shall disregard it on this appeal.

The bill, which is filed by appellants as creditors of Long & Greenhut, a late mercantile partnership, seeks to assail, for fraud, a conveyance of lands, and a transfer of a stock of goods and notes and mortgages, made by the firm to F. Greenhut, December 6, 1886. The conveyance of the lands recites as its consideration the sum of $2,170 paid by the grantee to the grantors; and the consideration expressed in the transfer is the satisfaction and release of an indebtedness due by the grantors to the grantee in the sum of $6,071.58. The answers, however, allege that the consideration of both conveyances is the payment and discharge of an indebtedness amounting to the aggregate of the sums recited in both instruments. The answers make the case of a sale by an insolvent debtor to a preferred creditor, in payment of his demand. We have often ruled, that in such case the inquiries relate to the *bona fides* and amount of the debt, the value of the property, and the reservation of an interest or benefit to the debtor.

The grantee claims that the indebtedness, which constitutes the consideration of the conveyances, consists of money loaned by him to Long & Greenhut, and collections made by them for him. The claim is, that F. Greenhut loaned money

to the firm in various sums, from time to time, commencing with January, 1877, and extending to 1884, a period of seven years; and that a settlement was made between them, April 21, 1884, whereby the balance found due was $6,204.60, for which they gave two notes, one for $3,000, and the other for $3,204.60. These notes, with interest, and moneys subsequently collected by the firm, it is alleged, are the constituent elements of the indebtedness. The principles of law governing the case are well settled, and its correct determination mainly depends upon the sufficiency of the prrof. In the discussion of the evidence, the following rules must be observed and applied. As the demands of complainants were contracted prior to, and were existing at the time of the sale, the *onus* is on the purchasing creditor to establish, not only a *bona fide* debt, but also that the amount was not materially less than the fair and reasonable value of the property; in other words, that an adequate and valuable consideration was paid. The proof produced to establish these essential facts, must be clear and satisfactory, in order to defeat the right of another creditor to have the debtor's property appropriated to the payment of his claim; and when near relationship exists, as in this case, the grantee being the brother of one, and the cousin of the other grantor, more vigilant and jealous scrutiny will be excited, and clearer and more convincing proof required, than when the transaction is between strangers.

F. Greenhut testifies, that he loaned the firm money from January, 1877, to April, 1884, to the amount represented by the notes of that date, and at the time of the sale they were indebted to him in the exact aggregate of the sums expressed in the conveyances. But his testimony is, in this respect, unreliable and unsatisfactory. He kept no memorandum or account of the moneys loaned, but trusted to his brother, and did not examine the books of the firm. The items are numerous, and range from five dollars upwards, and were advanced at divers times through a series of seven years. To recall them is beyond the power of memory, unaided and unrefreshed by note or memorandum. A recollection of the several component amounts is requisite to a reliable and correct statement of the aggregate, if there be no other *data* from which it is ascertainable. The same observations apply with equal force to the testimony of Long, one of the partners. He testifies, that the firm obtained money from F. Greenhut, at first in small sums, and afterwards in larger;

but he derives his knowledge of the amounts solely from the books, the accuracy of which he does not know, but only presumes. He remembers nothing material, and says the transactions were had with A. Greenhut. His evidence is loose, vague, and indefinite. The uncertain and unsatisfactory character of the evidence of these witnesses leaves the ascertainment of the amount of indebtedness dependent, apart from the books, upon the testimony of A. Greenhut.

He testifies, substantially, that Long & Greenhut obtained from F. Greenhut, at divers times, considerable sums of money, the account of which was not closed until April 21, 1884, on which day they had a settlement, and gave the notes of that date for the balance found due. To his depositions is appended an account, which he states is a correct copy as taken from the books of the firm, and that each and every item is just, true and correct. The account begins in January, 1877, and closes in April, 1884. If it be a correct copy of the entries, as they appear in the books, the account and the books will harmonize as to dates and amounts. No books covering the years 1877 and 1878 are produced; but there is a cash book commencing in January, 1879, and ending in December, 1883. We have carefully examined the items of cash entered in this book, which purports to show the cash received by the firm during that period on any account, and from all sources whatever. The first entry of cash received from F. Greenhut is $51.75, January 15, 1880, and the next is $125, July 30th, 1881. With these exceptions, there are no entries of cash received from him prior to the latter date, though there are several entries of cash advanced to him in small sums. It would be a circumstance which calls for explanation, to debit him with cash advanced, and omit to credit him with cash received from him. Further: The books show that the account of F. Greenhut, which A. Greenhut testifies was not closed until April 21, 1884, was closed by notes January 31, 1883. He enters in the account, made and verified by him, the precise amount of interest which the ledger shows was allowed F. Greenhut on the settlement. This he must have taken from the book entry of the settlement. This discrepancy is scarcely susceptible of explanation. A comparison of his evidence with the books, to which he appeals for verification of the correctness of the account, renders manifest that, instead of corroborating, they disprove his statements. The mind of the court can not rest on his testimony with any degree of satisfaction. It is

31

not the clear and convincing proof which equity exacts in cases like this.

Certain books of the partnership were produced on notice of complainants, and have been sent, by order of the chancellor, for our inspection. The portions used in evidence by the parties are copied and incorporated in the record. It remains, therefore, to consider the sufficiency of the proof furnished by the books, as to the amount of the indebtedness. Though produced under notice, and introduced by both parties, they are not to be regarded as conclusive in favor of either; but only entitled to such weight as may be proper in view of all the circumstances. Exclusive of the cash book, to which we have alluded, the first entry of a transaction with F. Greenhut, is the entry of a note for $1,173.20, and appears in the ledger of 1882–83, under the head of "Notes payable," and under date of February 28, 1882. There is no entry in any book showing the consideration of this note; though in respect to another note appearing in the same ledger, under the same head, and under date of March 27, 1882, the cash book shows an entry on that day of six hundred dollars cash received from F. Greenhut, and the journal shows that the latter note was given for that money, with interest. If full effect be accorded to the ledger as evidence, it only proves the existence of the note. In the absence of explanation, the presumption arises from the execution of a note, that all previous matters of account were settled and closed thereby. This presumption is strengthened by the testimony of F. Greenhut. Though retaining no recollection of these notes, he supposes them to be correct because they are entered in the books, and states that, if he had such notes, they were given for money previously loaned. As to the note of March 27, 1882, he is evidently mistaken, or the books are incorrect. The most favorable view for defendants is, that when the note of February 28, 1882, was given, all previous matters of indebtedness, if any existed, were taken into the account, and that this should be taken as the initial item of calculation in ascertaining the amount of indebtedness. A calculation on this basis, and assuming the correctness of every item of cash subsequently received, and every note as entered in the books, except the note for $4,850.00, with legal interest to May 1, 1884, the time to which A. Greenhut testifies interest was calculated, will show that the amount of indebtedness on

that day was about three hundred dollars less than the aggregate sum represented by the notes of April 21, 1884.

In this mode of calculation, we have excluded the note for $4,850.00 for several reasons. It purports to have been given for the balance found to be due by the settlement of January 31, 1883, all prior notes and cash having been taken into the settlement. It is true, neither of the partners was examined or testified in respect to it; but A. Greenhut, in stating that the account was not closed until April 21, 1884, affirms, in effect, that no such settlement was made. The books furnish the only evidence that such note was ever given. Referring to the journal, we find that the entry of this note in the ledger consists of two notes, each for one-half of the amount, and payable on the 15th day of September and October, respectively, but in what year does not appear—presumably 1883, the year of their dates. In respect to this entry, unexplained erasures and alterations appear on the journal, which cast suspicion on the transaction. Also, the footing at the bottom of the column, and the difference in ink, indicate that the entry was made in the journal, not at the time it purports, but at some subsequent period. There is no proof as to when, or by whom it was made, except that A. Greenhut was the book-keeper.

Furthermore, the account of "Notes payable," as it appears in the ledger, is credited with the note for $4,850, under the date of January 24, 1884. This credit, *prima facie*, imports that the note was paid or taken up in some way on that day; and in the absence of explanatory proof, justifies such inference. As this account is kept in the ledger, it is debited with the notes when issued, and credited with them when taken up, contrary to the proper mode of book-keeping. The result, however, is the same. The consequence would be, to exclude from the calculation all prior notes, and charges of cash, thus reducing the indebtedness to a relatively small sum. But, if the entry in regard to these notes were satisfactorily explained, and their existence proved, a settlement and closing up of all precedent matters would appear. If these notes be taken as the basis of calculation, the amount of the debt will be less than the sum of the notes of April 21, 1884, by more than two hundred dollars. The difference consists in usurious interest being charged. Ordinarily, the validity of a conveyance by a debtor, in payment of a debt, can not be assailed by a creditor on the ground of usury. There was no special agreement as to the rate of

interest to be paid on the general indebtedness, so far as disclosed by the evidence. Independent of agreement, the law presumes only legal interest. When no previous agreement exists, and the creditor receives, and the debtor allows, usurious interest on a settlement and sale of property in payment of a debt, this is a circumstance, dependent for its weight upon the other circumstances with which it is associated; and if it appears that this is done for the purpose of swelling the debt to an amount not materially less than the value of the property, the transaction is fraudulent.

It is claimed, as we have stated, that the indebtedness also consisted of collections made by Long & Greenhut after the notes were given. Among these collections is a note of Flexner & Litchen for borrowed money. A. Greenhut testifies, that this money was not included in the notes of April, 1884; and F. Greenhut states that he gave the money to Long & Greenhut, and told them to let Flexner & Litchen have it, and that it was loaned after he left for Europe. These statements are contradicted by Lichten, and by the books of both firms. He testified that his firm borrowed five hundred dollars from Long & Greenhut, March 1, 1883, for which they gave a note April 21, 1884, maturing in the following October, and at its maturity paid them $595, the principal and interest. The amount thus collected entered into the indebtedness to F. Greenhut, as fixed at the time of the sale. In the cash book of Long & Greenhut, there is an entry, made in April, 1883, of five hundred dollars cash to Flexner & Lichten, which is entered as a charge against them on the journal and ledger, without being closed by note. It does not appear that F. Greenhut let Long & Greenhut have any money at or near the time of the loan. If obtained from him at different times previously, they never received credit for it, either prior to, or on the settlement of April, 1884. From the evidence of Lichten, supported by the books of both firms, the conclusion is irresistible, that the money was loaned Flexner & Lichten in 1883, and entered into the balance found due on the settlement of April, 1884. It also constituted an additional and independent element of the debt, as fixed at the time of the sale.

We need not discuss at length the evidence as to the value of the property. We accord little, if any, weight to the testimony of Long as to this matter. Other witnesses place a less proportionate value per acre on detached parts of the lands, than the value of the whole, as estimated by the par-

ties.   At the time of the sale, they were valued in mass, and were separately conveyed.   Detached portions may not be worth as much per acre as their proportionate rate of the valuation of the entire lands when taken together.   The testimony of A. Greenhut sustains the estimated value in making the sale.   The goods were inventoried, and valued at original cost, less ten per cent.   The stock was comparatively new, having been purchased between August, 1884, and November, 1886, and consisted largely of staple goods. The estimates of witnesses, not having knowledge of the character and quantity of the stock, based on casual and general inspection, is not satisfactory; nor is the price at which the goods were subsequently sold by the receiver convincing.   The notes and mortgages were evidently undervalued, for the receiver has collected several hundred dollars more than their estimated valuation.   The value of the entire property, as estimated by the parties for the purposes of the sale, exceeds $7,800.   If to this be added the difference between the estimated value of the notes and mortgages and the amount collected by the receiver, it amounts to $8,200.   And the aggregate of the price paid for the lands, as expressed in the conveyance, and the sums actually realized by the receiver from the sale of the goods, and from the notes and mortgages, leaving out of the account those uncollected, exceeds $7,400.   Under these circumstances, defendants can not complain, if their estimate for the purposes of the sale is taken as the fair and reasonable value of the property.   It is not presumable that they overrate it.

Counsel argue, that it is not supposable that, in making the settlement and giving the notes of April 21, 1884, when the admission of so large indebtedness was against their interest, Long & Greenhut concocted a fraud, and F. Greenhut conspired with them, to defeat their creditors more than two years preceding their failure, and before the debts to complainants were contracted.   In this connection, we need only to refer to the testimony of A. Greenhut, that Long & Greenhut, on the first of April, 1884, owed fully or nearly as much as they were worth, and that they made no money during the succeeding years; nor to their former failure in October, 1881; nor to the fact, that at that time they transferred mortgages to F. Greenhut to secure a debt said to be due him, which he neither took possession of, nor looked after; nor that the books do not show any settlement, or that such notes were given on that day, except a pencil

memorandum, when and by whom made not appearing; nor to the absence of proof as to where and by whom the notes were kept during F. Greenhut's two years absence in Europe. It is unnecessary to determine whether such settlement was actually made, and such notes then given; for the difference between the amount of the debt, as ascertained by either of the modes of calculation we have suggested as the most favorable for defendants, and the amount of the notes, would not be material enough of itself to invalidate the sale. We have discussed the evidence as to the amount due April, 1884, because it is an element of the indebtedness in payment of which the property was sold, and has a material bearing upon the *bona fides* of the transaction, in that it was enlarged at the time of the sale by the amount collected from Flexner & Litchen, which we have shown entered into the settlement of 1884. Leaving out of consideration some discrepancies in the testimony of F. Greenhut, his loans of money to other persons in the meantime, his indefinite and general account of the sources from which he obtained the money, except his salary as clerk, and his obtaining money from Long & Greenhut at divers times in small sums, and also money with which to purchase cotton; we are still forced to declare that the evidence, whether considered in parts or in entirety, fails to clearly and satisfactorily establish that the amount of the *bona fide* debt was not materially less than a fair and reasonable value of the property.

The sale was attended by unusual circumstances, which render the transaction suspicious. It was made in haste and secrecy, and in the absence of F. Greenhut, without consultation with him as to the price of the property; the conveyances were prepared at night, and executed next morning before his arrival; the amount of the debt, and the value of the property, were fixed by A. Greenhut, and the sale was made within three weeks after F. Greenhut's return from Europe. These facts, and others disclosed by the evidence, reasonably justify the inference, that a benefit was reserved to the debtor. We have no doubt that F. Greenhut loaned the firm some money, and that they were indebted to him, but in what amount we are unable to satisfactorily ascertain. If he trusted to his brother to fix the amount of the debt, and he wrongfully and fraudulently swelled it by the inclusion of improper items for the purpose of covering the fair and reasonable value of the property, and if he trusted to him to

[Alexander v. Hill.]

fix its value, he must bear the consequence of his own folly, and of a fraud the fruits of which he accepted.

Reversed and remanded.