## IN RE WADDELL-ENTZ COMPANY, RECEIVERSHIP.

Third Judicial District, New Haven, January Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The term "collateral security" necessarily implies the transfer to the creditor of an interest in or lien on property, or an obligation which furnishes a security in addition to the responsibility of the debtor; but the execution and delivery by the debtor of additional unsecured evidences of his own indebtedness, does not in any legal sense constitute collateral security.

In the distribution of the assets of an insolvent corporation in the hands of a receiver, a creditor is entitled to a dividend computed on the actual amount of his debt, only. The fact that he holds other unsecured obligations of the corporation as "collateral security," does not entitle him to a dividend computed upon his actual debt plus the amount of these obligations; nor does a sale of such obligations by the creditor to himself, enlarge his rights in this respect.

Such obligations might constitute a debt against the insolvent corporation for their face value, if transferred by valid assignment to an innocent purchaser; but a sale by the creditor to himself after notice of the insolvency of the corporation and the appointment of a receiver, does not give him the standing of an innocent third party.

Section 590 of the General Statutes provides that a secured creditor of an insolvent debtor whose estate is in settlement in the Court of Probate, shall be allowed a dividend only on the excess of his claim above the value of the security, unless he elects to relinquish such security. *Held* that this rule was equitable and just, and equally applicable to a secured creditor of an insolvent corporation, in the distribution of its assets by a receiver.

[Argued January 24th—decided February 21st, 1896.]

APPLICATION by the receiver of the Waddell-Entz Company for instructions as to his duty in respect to the payment of a dividend upon certain claims presented ; brought to the Superior Court in Fairfield County and reserved by that court, *Elmer, J.*, upon a finding of facts, for the consideration and advice of this court.

The trial court made the following finding of facts :—

" The receiver of the above mentioned company was appointed in this action on February 10th, 1894, and an order subsequently made limited the time for presentation of claims against it to the receiver. Within the time so limited, to wit, on May 9th and June 4th, 1894, by writings, copies of which are annexed and marked Exhibits 'A' and 'B,' William A. Procter presented a claim against said company for a note, a copy of which is annexed and marked Exhibit 'C,' and ten (10) coupon obligations for $1,000 each, a copy of one of which is hereto annexed and marked Exhibit 'D.' Said ten (10) coupon obligations aforesaid are the 'collateral security' referred to in said note as deposited with it. After default upon the coupon dated May 1st, on said obligations, the said William Procter elected to have the principal sum due, in accordance with the provisions of said obligations, and gave the notice required for that purpose. On the 28th day of May, 1894, said Procter having previously demanded payment of the note of $4,500, purchased said coupon obligations of himself at private sale, for $50, (which was then as much as could have been obtained for them at any public sale), and gave credit for the sum upon his claim, as appears by Exhibit 'B.' Said William A. Procter was a stockholder in said The Waddell-Entz Company at the time that he loaned said $4,500 to said company and took its note therefor. Said coupon obligations hereinbefore referred to as Exhibit 'D,' were issued by vote of the directors of said company, which authorized their issue to the amount of $500,000, but in fact only 106 were issued, 81 of which were sold by the directors for the benefit of the company (of which 13 were sold to said Procter, Nos. 32 to 44, and about which no question arises), and the other 26 used as 'collateral security' so-called, in connection with various loans, 10 of which were given to the said Procter, and the balance as follows :—

" To John Crosby Brown, who loaned the company $2,500 on January 5th, 1893, taking its demand note therefor, similar to the Procter note, 6 of the coupon obligations were

given as stated above.. Said note of $2,500 and the 6 coupon obligations amounting to $6,000, are presented by Brown as a claim against said company, and for a dividend upon the same.

" To Mrs. Margaret B. Smith, who loaned the company $750, October 28th, 1893, taking a demand note therefor similar to the Procter and Brown notes, 2 of the coupon obligations were given; and the $750 note, as well as the 2 coupon obligations, amounting to $2,000 more, have been presented as a claim to the receiver.

" No steps were taken either by J. C. Brown or Mrs. Smith, under the provisions of their demand notes, for the sale or other disposition of the coupon obligations.

" The remaining 8 of the said 26 coupon obligations of The Waddell-Entz Company, were given by said company to Messrs. Knauth, Nachod & Kuhne, bankers of New York, whose claim arises under the following circumstances:—

" Said bankers, who were at the time stockholders in said company, loaned the company from time to time various sums of money, which amounted, before said receivership occurred, to about $6,500, for the security of which certain foreign letters patent and contracts were pledged by the company. Said bankers also, on October 25th, 1893, loaned the company $3,500, taking a demand note therefor, similar to the other demand notes already described, and in connection therewith 8 of the coupon obligations of said The Waddell-Entz Company. An action was brought to the Superior Court in Fairfield County in 1895 by said bankers, after they had presented their whole claim to the receiver, to foreclose the letters patent and contract rights given to secure said open account, and in June, 1895, a judgment of foreclosure was entered and a sale made thereunder, upon which sale the sum of $5,000 was realized and paid over to the said firm of bankers, and a deficiency judgment entered for the sum of $7,336, being the amount due out of the original indebtedness of $12,336, which was made up of both what was due on open account and the demand note of $3,500 and

interest. Said bankers now present as a claim against said company, and ask for a dividend upon the total indebtedness of $12,336, making no deduction of the $5,000 received through the avails of the foreclosure sale; and also claim the benefit of any ruling the court may make upon the coupon obligations which they hold in the same way in which J. C. Brown and Mrs. Smith still hold their coupon obligations.

"The claims presented to the receiver within the time limited therefor, amount in the whole to about $100,000, and the assets in the hands of the receiver which can be used for the application of a dividend, to about $10,000. The receiver, preparatory to paying the final dividend upon the lawful claims against the company, asks the instruction of this court upon the following points:—

"*First:* As to whether the said Procter, on the facts as aforesaid, is entitled to a dividend upon his claim as presented; or whether he is entitled to a dividend only upon the original indebtedness of $4,500, and the 13 coupon obligations numbered 32–44.

"*Second:* As to whether the said J. C. Brown and Mrs. Smith are entitled to dividends upon both their demand notes and the coupon obligations presented in connection therewith, or only upon the amount of said demand notes.

"*Third:* Knauth, Nachod & Kuhne's claim is that they should have a dividend upon $12,336, being the amount of the judgment before the moneys realized upon the sale under that judgment were credited, and also a dividend upon the 8 coupon obligations given under the circumstances above narrated.

"The receiver claims that Knauth, Nachod & Kuhne's dividend should be paid upon the following basis: (a) Apply the money realized from the sale of the foreign patents to the payment of the amount of the open account, which these particular patents were given to secure, and pay a dividend upon the balance; (b) also pay a dividend upon the amount of the demand note and interest, disregard entirely the 8 coupon obligations given as collateral, so-called, for that particular note."

## EXHIBIT " A."

W. A. PROCTER,

United Bank Building,

CINCINNATI, May 9th, 1894.

MR. MONTGOMERY WADDELL,

Receiver of the Waddell-Entz Co.,

No. 203 Broadway, New York City.

Dear Sir:—Having seen notice that all claims against the Waddell-Entz Co. must be presented within three months after the 17th day of February, 1894, I hereby notify you that I am the holder of thirteen coupon notes of the Company and that thirteen coupons of thirty dollars each, due May 1st, 1894, have not been paid; also, that I hold a demand note for forty-five hundred dollars, given by the Company, October 12th, 1893, bearing six per cent. interest, and that no payment of principal or interest has been made thereon. I present this, as my claim, against you, as Receiver.

Please acknowledge receipt of same in enclosed envelope.

Yours Resp'y,

WM. A. PROCTER.

Per THOS. C. SHIPLEY, Att'y.

CINCINNATI, O., May 9, 1894.

The WADDELL-ENTZ CO. (Montgomery Waddell, Receiver),

To WILLIAM A. PROCTER,

| | |
|---|---|
| (13) Thirteen coupons ($30.00 each), due May 1st, 1894, . . . . . . . . | $ 390.00 |
| Demand note of October 12, 1893, for . . | 4,500.00 |
| 6% interest on $4500 from Oct. 12, '93, | |

## EXHIBIT " B."

W. A. PROCTER.

United Bank Building,

CINCINNATI, June 4th, 1894.

MR. MONTGOMERY WADDELL,

Receiver of The Waddell-Entz Co.,

Bridgeport, Conn.

Dear Sir: The claims held by me against the Waddell-Entz Co. are as follows:

In re Waddell-Entz Co.

Thirteen (13) 5-year 6% Stock Option Gold Notes
  ($1,000 each) numbered 32 to 44 inclusive,    . $13,000.00
13 coupons for interest on above notes due May 1,
  '94,    .    .    .    .    .    .    .    .              390.00
Demand note, dated Oct. 12, 1893, (copy
  herewith,    .    .    .    .    .    $4,500.00
With 6% interest to May 28, '94, (228
  days)    .    .    .    .    .    .      171.00
                                         ──────────
                                         $4,671.00
Less received from sale of collateral,      50.00
                                         ──────────
                                                        4,621.00
Ten (10) 5-year 6% Stock Option Gold
  Notes, numbered 51 to 60 inclusive    .    .    10,000.00
10 coupons for interest of above notes, due May 1,
  '94,    .    .    .    .    .    .    .    .              300.00
                                                      ──────────
                                                      $28,311.00

I have presented to you my claim before, but I send this
notification as there has been a change made by my pur-
chasing the ten notes which I held as collateral to secure the
$4,500.00 note.                Yours resp'y,
                                    WM. A. PROCTER.

EXHIBIT "C."

$4,500.00.              NEW YORK, N. Y., October 12, 1893.

On demand, we promise to pay William A. Procter, or
order, for value received, four thousand, five hundred dollars,
having deposited with him as collateral security for the pay-
ment of this and any other liability or liabilities of ours to
said William A. Procter, due or to become due, or that may
be hereafter contracted, the property named on the back
hereof, with full power and authority to him or his assigns,
in case of the non-payment of this or any other liability above
mentioned, or any part thereof, to sell, assign and deliver
the whole or any part of such securities, and such other
security subsequently submitted in lieu thereof or in addi-

tion thereto, at any brokers' board, or at public or private sale, at their option, without advertisement or notices to us, and with the right on his part to become purchaser thereof at such sale or sales, freed and discharged of any equity of redemption, and after deducting all legal and other costs and expenses of such sale or sales, to apply the residue of the proceeds thereof to the payment of this and any other liability above mentioned, as said William A. Procter shall deem proper, returning the overplus to the undersigned. In case of deficiency we promise to pay the same to William A. Procter or his order. This note bears interest at the rate of 6% payable semi-annually.

THE WADDELL-ENTZ COMPANY.

ALFRED A. WHITMAN, Treasurer.

PERCIVAL KNAUTH, President.

[Endorsement.]

Ten (10) 6% 5-year Stock Option Gold Notes, Nos. 51–60 of The Waddell-Entz Co., with November, 1893, coupons.

Oct. 30, '93, November coupons returned for cancellation.

CINCINNATI, O., May 24, 1894.

Pay to the order of Warner Ells, for my account.

WILLIAM A. PROCTER.

NEW YORK, May 28, 1894.

Credited by sale of collateral ($50) fifty dollars.

WILLIAM A. PROCTER.

per WARNER ELLS,

Att'y in fact.

## EXHIBIT "D."

$1000.                                             $1000.

### No. 51.

#### THE WADDELL-ENTZ COMPANY.

Five Year Six Per Cent. Stock-Option Gold Note.

For value received, The Waddell-Entz Company, a corporation under the laws of West Virginia, promises to pay to bearer in five years from the first day of May, A. D. 1893,

at its office in the City of New York, the sum of One Thousand Dollars in the gold coined money of the United States of the present standard of weight and fineness, together with interest thereon, payable semi annually on the first days of May and November in each year until paid, at the rate of six per centum per annum. This note is one of a series of five hundred notes, amounting in the aggregate to the sum of five hundred thousand dollars, each for the sum of one thousand dollars, and numbered from 1 to 500, both numbers inclusive. Said company agrees that the holder may surrender this note on any coupon day prior to maturity and receive in exchange therefor forty shares of the stock of The Waddell-Entz Company in Trustees Certificates as now issued, which said stock shall carry all accrued dividends then earned but not actually paid thereon prior to such surrender, and further, that no dividend shall be declared upon the stock of the Company so long as any of said notes shall be outstanding until a sinking fund for said notes shall have been created which shall have received previously a sum equal to the amount of each said dividend. The principal of this note will in case of default in payment of interest thereon become thirty days thereafter due and payable, if the holder so elect and serve written notice thereof upon the Company.

Witness the corporate seal of The Waddell-Entz Company and the hands of its President and Treasurer thereunto lawfully authorized by resolution of the Board of Directors of said Corporation, this first day of May, A. D. 1893.

THE WADDELL-ENTZ COMPANY.

| CORPORATE SEAL. | By P. KNAUTH, | President. |
|---|---|---|
| | ALFRED A. WHITMAN, | Treasurer. |

| The Waddell-Entz Company | $30 |
|---|---|
| will pay to bearer | coupon |
| Thirty Dollars, | 1 |

at its office in the city of New York on the first day of Nov. 1893, being six months interest on its note. No. 51.

ALFRED A. WHITMAN,<br>Treasurer.

*Morris W. Seymour* and *Howard H. Knapp*, for the receiver.

A creditor cannot recover a dividend based upon a sum in excess of his actual debt. *People* v. *Remington*, 54 Hun, 480; affirmed, 121 N. Y., 675; *Third Nat. Bank* v. *Eastern R. R. Co.*, 122 Mass., 240; *Merchants' Bank* v. *E. R. R. Co.*, 124 id., 518; Gluck & Becker, Receivers of Corp., 412; Colebrook on Collateral Securities, 123; *Jessup* v. *City Bank of Racine*, 14 Wis., 359. Procter's sale of the alleged collateral to himself, did not in any respect alter his situation, or give him the rights of a *bona fide* purchaser of such obligations. As Knauth, Nachod & Kuhne were secured in part, at least, they should be allowed a dividend only on the excess of their claim above the value of their security. The case of *Findlay* v. *Hosmer*, 2 Conn., 350, relied upon by them, was decided in 1817, long before the passage of our insolvent law, which states the present policy of our State in regard to the payment of secured creditors. General Statutes, § 590; *New Haven Wire Co. Cases*, 57 Conn., 387; *Nowell's Appeal*, 51 id., 111; *Third Nat. Bank* v. *Lanahan*, 66 Md., 462. See also *Amory* v. *Francis*, 16 Mass., 306; *Farnum* v. *Boutelle*, 13 Met., 159; *Merchants' Nat. Bank* v. *Eastern R. R. Co.*, *supra; State Bank* v. *Receivers of Bank of New Brunswick*, 2 Green's Ch. (N. J.), 266; *Corrigan* v. *Trenton Delaware Falls Co.*, 3 Halstd. Chanc. (N. J.), 489; *Fish & Green* v. *Potts*, 4 Halst., Ch., 277; *Wurtz* v. *Hart*, 13 Ia., 515; *Wheat* v. *Dingle*, 32 S. C., 473; *In re Frasch*, 5 Wash., 344, 34 Pac. Rep., 755; *Greenwood* v. *Taylor*, 1 Russ. & My., 185; *Brocklehurst* v. *Jessop*, 7 Simons, 438.

*John H. Perry* and *George E. Hill*, for the claimant William A. Procter.

The three cases relied upon by the receiver are not strictly in point. The case of *Bank* v. *Eastern R. R. Co.*, 122 Mass., 240, was brought under a special statute, and the judgment therein was controlled *solely by the terms of that Act*. The ordinary rules of law upon which we stand were not the basis of that decision at all.

The case of *Royal Bank of Liverpool* v. *Grand Junction R. R. & D. Co.*, 100 Mass., 444, holds unequivocally in cases precisely like ours in principle, that the creditor may collect both upon the collateral and the principal obligation *pari passu* up to the full amount of his indebtedness.

The New York case, *People* v. *Remington*, 54 Hun, 480, seems also to be controlled by a statute of that State. The last of the three cases upon which the receiver relies, is *Jessup* v. *City Bank*, 14 Wis., 359. The reasoning in that case rests upon the idea that the creditor could not recover more than the amount of his actual debt. We make no such claim as that. We shall obtain, if our claim is allowed, but a small fraction of the original indebtedness.

Upon principle and authority we are entitled to a dividend upon the balance due on our note and also upon the collateral bonds, inasmuch as the original debt will not then be paid in full. *In re Binghamton Gen. Elec. Co.*, 143 N. Y., 261; *Findlay* v. *Hosmer*, 2 Conn., 350; *People* v. *Remington*, 121 N. Y., 328; *Lewis* v. *United States*, 92 U. S., 618; *Story, Eq. Jur.*, §§ 524, 640; *Allen* v. *Danielson*, 15 R. I., 440; *West* v. *Bank of Rockland*, 19 Vt., 403; *Moses* v. *Ranlet*, 2 N. H., 488; *Kellock's Case*, L. R. 3 Ch. App., 769.

*Antonio Knauth*, of New York, filed a brief in behalf of the claimants, John C. Brown and Margaret B. Smith.

HAMERSLEY, J. When the law takes possession of the property of an insolvent debtor, that property becomes a trust fund to be divided among such creditors as may present their claims in the prescribed manner; and the respective interests of the creditors in the fund are, as between themselves, of an equitable nature, to be determined on a basis of equality. This is true of the property of an insolvent corporation when it is taken possession of by a receiver under the statute providing for the winding up of a corporation, as truly as when it is taken possession of by a trustee under the statute regulating insolvent estates. *New Haven Wire Co. Cases*, 57 Conn., 352, 387.

The questions submitted by this reservation present little

difficulty when it is remembered that the real question is, not what remedies each creditor may have had against the solvent corporation, but simply what is the amount of actual debt due from the insolvent estate to him; such debt and such only can be proved, as the basis for an equitable distribution of the trust fund.

A consideration of the disputed claims of William A. Procter and Knauth, Nachod & Kühne, will dispose of all the others.

Procter's claim (aside from the thirteen bonds Nos. 32 to 44, about which no question arises) is based on a loan to the Waddell-Entz Company of $4,500. As evidence of the debt he received a demand note for that amount (Ex. " C "); he also received ten notes or bonds (in the form of Ex. " D ") for $1,000 each, and claims that the debt on which he is entitled to a proportionate dividend from the trust fund is $14,500. If he had received a demand note for $14,500, or if he had received 145 notes under seal for $100 each, it would hardly be claimed that he could prove more than his actual debt of $4,500; whatever advantages possession of evidences of debt in such form might secure to him in enforcing his rights against his debtor, the possession of such advantages does not alter the fact that his real debt is $4,500, and that fact must control his right to a dividend from the insolvent estate. The amount of his debt is not altered because in the demand note the ten bonds delivered to him are called " collateral security." They are not collateral security for the payment of the original debt. The demand note itself is in a sense a security dependent for its value on the credit and property of the borrower; another note or fifty other notes furnish a similar security; they might aid the creditor in enforcing speedy payment by the debtor, but in case of insolvency it is the actual debt and not the multiplication of evidences of debt that defines the creditor's interest in the trust fund. " Collateral security " necessarily implies the transfer to the creditor of an interest in some property or lien on property, or obligation which furnishes a security in addition to the responsibility of the

debtor. The law regulating this subject rests on the assumption of such transfer to the creditor of property in some form, on which property he relies for security, and which he is entitled to apply instead of resorting to the debtor's own property towards the satisfaction of his debt, by virtue of a contract implied or express as the case may be, but collateral to the contract of indebtedness. A debtor's additional promises to pay cannot, from the very nature of the case, be treated as collateral security for his debt, unless such additional promises are themselves secured by a lien on property or by the obligations of third persons; under such circumstances they may be treated as collateral security so far as is necessary to obtain the benefit of the lien or obligation. This self-evident proposition has rarely been discussed in reported cases. The principle, however, has been clearly stated by the courts of New York and Massachusetts. *People* v. *Remington*, 54 Hun, 480, affirmed, 121 N. Y., 675; *Third Nat. Bank* v. *Eastern R. R. Co.*, 122 Mass., 240 ; see also 124 id., 518. In the case of *In re Litchfield Bank*, 28 Conn., 575, it was apparently conceded by all parties that the currency of a State bank, pledged as security for the payment of its promissory notes, is pledged as money; the case turned on a claim of tort in selling the money so pledged, and the question now at issue was not considered.

The amount of Mr. Procter's debt is not altered by the sale from himself to himself of the bonds. Such bonds were not "collateral security" for the demand note, and their sale to himself or others would not be governed by the law peculiar to the disposition of such security. Whether or not they might constitute a debt for their face value in the hands of a third party who had purchased them from Procter, would depend upon the circumstances of such purchase. Their standing, in such case, as a debt against the insolvent estate, would not depend on their sale as " collateral security," but on their valid assignment to an innocent third party. Mr. Procter by purchasing these bonds from himself, after he had been advised of the insolvency of the com-

pany and the appointment of a receiver, and after he had presented his debt of $4,500, did not put himself in the position of, nor in a position analogous to that of, an innocent third party.

One claim of Knauth, Nachod & Kuhne raises a different question, although its solution is largely controlled by the same principle, *i. e.*, the equality of the creditors in respect to their equitable interests in the trust fund. These claimants held collateral security for their debt; they have sold that security through proper legal proceedings, and have received the proceeds. The fact that they themselves were purchasers at the sale is immaterial. They now insist that for the purposes of a division of the trust fund, the amount or value of the proceeds received by them from the sale of their security cannot be deducted from the original amount of their debt.

It is undoubtedly true that a creditor holding collateral security may, in case of non-payment of the debt, pursue all his remedies at the same time, or either one before having recourse to the other. He is not bound to apply the collateral security before enforcing his direct remedy. He has a legal property interest in the security as well as in the debt; to deprive him of either might be in the nature of a violation of the obligation of a contract; his rights, however, are limited to the satisfaction of his debt, and if he gains more, a trust arises which equity will enforce. But when the debtor is insolvent, and his property is taken into the custody of the law as a trust fund to be distributed among the creditors on the basis of equality under direction of a court exercising equity powers, the right of a secured creditor to a share of that fund stands on the same footing as the right of every other creditor who presents a claim; and the amount upon which he is entitled to a dividend must be determined on the same principles. He cannot be deprived without consent, of the property which he holds as security, he cannot be deprived of his right to sue the debtor for any unpaid balance (unless by force of a discharge in insolvency or bankruptcy); but his share of the trust fund must be

determined by the same rule which determines the share of every other creditor, and that is a rule of equity for securing equality of treatment. Whether this rule of equity will permit a secured creditor to proceed against the fund in the hands of the trustee, as he might have proceeded against his debtor, without applying his collateral security to the reduction of his claim, and so to receive a dividend from the property of the insolvent, sequestered by operation of law for the equal benefit of all creditors, on that portion of his debt which the property of the debtor, sequestered by his own act for that special purpose, has paid or will pay in full,—is a question as to which courts in different jurisdictions have differed. The cases are reviewed in *People* v. *Remington*, 121 N. Y., 328. It may be doubtful whether in this State, prior to the Act of 1853 relating to insolvent debtors, this question had been conclusively settled, although *Findlay* v. *Hosmer*, 2 Conn., 350, and some subsequent cases, indicate an approval of the rule contended for by counsel for Knauth, Nachod & Kuhne. It is unnecessary, however, to discuss the question, for we are satisfied that legislation on that subject has settled the doubt in favor of a different rule.

The insolvent Act of 1853 contained a provision (now found in § 590 of the General Statutes) requiring a secured creditor who presented his claim against the estate, to elect between the surrender of such security and a dividend from such estate only upon the excess of such claim above the value of such security. In *Mechanics' & Farmers' Bank, Appeal from Probate*, 31 Conn., 63, 70, it was held that this statute placed all the property of the insolvent in the custody of the law, to be disposed of according to law; that the creditor has no vested interest in such property; and that the statute was "strictly remedial, providing for the appropriation of the debtor's property, on principles of equity and justice among all his creditors." The provision in relation to secured creditors was extended to insolvent estates of deceased persons; so that this equitable rule applied to the distribution by law of all insolvent estates, including insolvent corporations. In 1869 a law was passed for the winding

up of corporations, and under that law the property of the insolvent corporation could be taken possession of for division among all creditors in equal proportions, by a receiver appointed by the Superior Court as a court of equity, as well as by a trustee appointed by the Court of Probate under the insolvent Act. *New Haven Wire Co. Cases, supra.* The present proceeding is brought under this Act, which is still in force substantially unchanged. General Statutes, § 1942. The Act confers on the court full equity powers to make such orders as to the doings of the receiver " and as to the payment of debts and distribution of the effects of said corporation, as may be just and comformable to law." We think the property of an insolvent corporation is in the custody of the law to the same extent and for the same purposes when transferred to a receiver under § 1942, as when transferred to a trustee under the insolvent Act, and that the principle of the rule in respect to the participation of secured creditors in the distribution of such property, which is obligatory in the latter case, ought to be applied in the former. This is just and required by the insolvent Act.

The Superior Court is advised :—

*First :* William A. Procter is entitled to a dividend only on the original indebtedness of $4,500 and the thirteen coupon obligations numbered 32–44.

*Second :* John C. Brown and Mrs. Smith are entitled to dividends only upon the amount of their demand notes.

*Third :* Knauth, Nachod & Kuhne are entitled to a dividend on the excess of their claim of $12,336 above the amount received by them from the sale of their collateral security. They are not entitled to a dividend upon the eight coupon obligations.

In this opinion the other judges concurred.