## JONES v. THIRD NAT. BANK OF SEDALIA.

### In re HARTMAN.

(Circuit Court of Appeals, Eighth Circuit. May 6, 1926.)

#### No. 7058.

1. **Pledges ⬤⇒5—Debtor's note cannot be treated as "collateral security" for his debt, unless secured by lien on property.**

Debtor's note cannot be treated as collateral security for his debt, unless note is itself secured by lien on property, and in such case it may be treated as collateral security so far as necessary to obtain benefit of lien or obligation; "collateral security" being some security additional to borrower's personal obligation (citing Words and Phrases, "Collateral Security").

2. **Courts ⬤⇒372(9).**

Decisions of highest judicial tribunal of state in which chattel mortgage is made determine its validity in federal courts.

3. **Bankruptcy ⬤⇒340.**

Evidence *held* to show that bank knew that bankrupt made note and chattel mortgage securing his debt to bank excessive and fictitious as protection against his creditors, and that bank participated in such purpose.

4. **Bankruptcy ⬤⇒178(1), 310—Chattel mortgage, greatly in excess of loans from bank secured thereby, intended to hinder and delay creditors, held fraudulent and void, and not to entitle bank to preference as secured creditor.**

Where bankrupt gave note and chattel mortgage for $5,000 to bank to secure debt of $4,650, part of which was already secured by mortgages, and after payment of such debt bank retained note and mortgage to secure new loan of $2,650, in order to hinder and delay bankrupt's creditors, *held* that mortgage was fraudulent and void as to bankrupt's creditors, and did not entitle bank to preference as secured creditor.

Appeal from the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

In the matter of Henry. C. Hartman, bankrupt. From an order of the District Court, overruling objections of E. W. Jones, trustee in bankruptcy, to the allowance of a claim of the Third National Bank of Sedalia as a secured claim, and setting aside an order of the referee which sustained such objections, and allowing claim as secured claim, said trustee appeals. Reversed and remanded, with directions. ·

George F. Longan and Thomas M. Jones, both of Sedalia, Mo., for appellant.

James T. Montgomery, of Sedalia, Mo., for appellee.

Before SANBORN, Circuit Judge, and MUNGER and JOHNSON, District Judges.

JOHNSON, District Judge. Henry C. Hartman was adjudicated a bankrupt on the 9th day of August, 1923. Besides other indebtedness, the bankrupt at the date of his adjudication owed the Third National Bank of Sedalia, appellee, $2,513 for money borrowed from the bank, evidenced by a note of $2,400, dated June 4, 1923, and a note of $250, dated June 28, 1923, upon which a balance of $113 was unpaid. The bank at the date of adjudication also held a note of the bankrupt for $5,000 and a chattel mortgage on his personal property securing said note, both dated April 17, 1923. The bank presented its claim of $2,513 to the referee in bankruptcy, in which it set out that the $5,000 note and chattel mortgage were held as collateral security for the payment of the indebtedness of the bankrupt to the bank, and asked that its claim be allowed as a secured claim. The trustee filed objections to the allowance of the claim as a secured claim. The referee sustained the objections of the trustee. Upon review the District Court overruled the objections of the trustee, set aside the order of the referee, and allowed the claim as a secured claim. The trustee has appealed from the order of the District Court.

The questions presented by the appeal require this further statement of facts: Prior to the date of the execution of the $5,000 note and chattel mortgage, the bankrupt had become indebted to the bank in the sum of $4,650 for money borrowed by him from the bank. A part of this indebtedness was secured by chattel mortgages given in 1922. The balance was unsecured. About April 13, 1923, the president of the bank learned that the bankrupt had given a second mortgage on his farm, which was already heavily incumbered. Becoming apprehensive, the president of the bank wrote the bankrupt and requested him to call at the bank. On the 17th of April the bankrupt went to the bank, when, after an interview with the president of the bank, he and his wife executed the $5,000 note and chattel mortgage. A memorandum in these words was attached to the chattel mortgage:

"April 17, 1923, this note of $5,000 and chattel mortgage is given to the Third National Bank of Sedalia, Missouri, for any debts that are now owing or might be owing in the future to the Third National Bank by Henry C. Hartman and Hannah L. Hartman."

On June 4th the bankrupt paid his indebtedness to the bank. The bank at the time canceled the notes evidencing the $4,650 indebtedness and sent the chattel mortgages securing a part of this indebtedness to the office of the county recorder for cancellation and dis-

charge. Mr. Harris, the president of the bank, testified that he offered to cancel and discharge the $5,000 note and chattel mortgage, but the bankrupt stated that he desired to make a new loan of $2,400 with the bank, and asked him to retain the $5,000 note and chattel mortgage as security for that loan. The $5,000 note and chattel mortgage were retained by the bank, and the loan made. A note for $2,400, dated June 4, 1923, and due 60 days after date, was taken. It contained this recital: "Having deposited or pledged with said bank as collateral for the payment of this note, due August 3, C. M. $5,000." On June 28th the bank made a further loan of $250 to the bankrupt, for which it took a note, signed by the bankrupt and his wife, due 60 days after date. This note contained no recital respecting collateral.

The trustee objected to the allowance of the amount due the bank on these two notes as a secured claim on numerous grounds. The bank asserts that the trial court committed no error in allowing its claim as a preferred claim, because it held the $5,000 note and chattel mortgage as collateral security for the payment of the $2,400 note and the balance of $113 unpaid on the $250 note.

[1] Collateral security has been defined as some security additional to the personal obligations of the borrower. In re Waddell-Entz Co., 67 Conn. 324, 35 A. 257; Shoemaker v. National Mechanics Bank, 21 Fed. Cas. No. 12,801, pages 1331, 1334; D. M. Osborne & Co. v. Stringham, 4 S. D. 593, 57 N. W. 776; Edward P. Allis Co. v. Madison Electric Light & Power Co., 9 S. D. 459, 70 N. W. 650; 2 Words and Phrases, First Series, pp. 1252, 1253. In re Waddell-Entz Co., supra, the creditor held 10 bonds, of $1,000 each, issued by the debtor, as security for a loan of $4,500 evidenced by a demand note. The Supreme Court of Errors of Connecticut, in discussing the matter, said:

"The amount of his debt is not altered because in the demand note the 10 bonds delivered to him are called 'collateral security.' They are not collateral security for the payment of the original debt. The demand note itself is, in a sense, a security, dependent for its value on the credit and property of the borrower. Another note, or 50 other notes, furnish a similar security. * * * 'Collateral security' necessarily implies the transfer to the creditor of an interest in some property, or lien on property, or obligation, which furnishes a security in addition to the responsibility of the debtor. * * * A debtor's additional promises to pay cannot, from the very nature of the case, be treated as collateral se-

curity for his debt, unless such additional promises are themselves secured by a lien on property, or by the obligations of third persons. Under such circumstances, they may be treated as collateral security, so far as is necessary to obtain the benefit of the lien or obligation."

The bank claims that the negotiation of the $2,400 loan on June 4th was a new and independent transaction, in which it was agreed that the $5,000 note and chattel mortgage should be retained by the bank as collateral security. The $2,400 note so recites. Although the note of June 28th contains no such recital, the bank claims that the $5,000 note and chattel mortgage were held as collateral security for the loan by virtue of the memorandum attached to the chattel mortgage on April 17th. It is manifest that the $5,000 note itself added nothing of value to the $2,400 note, which the bankrupt gave the bank on June 4th. As said in Re Waddell-Entz Co., supra, "a debtor's additional promises to pay cannot, from the very nature of the case, be treated as collateral security for his debt, unless such additional promises are themselves secured by a lien on property. * * * Under such circumstances, they may be treated as collateral security, so far as is necessary to obtain the benefit of the lien or obligation." Undoubtedly the chattel mortgage was the security actually relied upon by the bank both on April 17th and on June 4th.

Although the memorandum attached to the $5,000 note and chattel mortgage, which recited that they were held as security for any debts that are now owing or might be owing in the future, was not detached, it is conclusive from the testimony that neither the bankrupt nor Mr. Harris on June 4th contemplated or intended that the bank would make future advances to the bankrupt to the amount of $2,600. If it be assumed it was understood on June 4th that the bank would make the $250 loan, it is certain that no other advances were contemplated. We have, then, a $5,000 note standing for and representing an indebtedness of $2,650, and the difference, amounting to $2,350, standing for and representing nothing. In other words, the $5,000 note was excessive and fictitious in that amount.

[2] The decisions of the highest judicial tribunal of the state in which a chattel mortgage is made determine its validity in the national courts. Dodge v. Norlin, 133 F. 363, 66 C. C. A. 425. In Webb City Lumber Co. v. Victor Mining Co., 78 Mo. App. 676, the Kansas City Court of Appeals said:

"The law is now quite well settled in this state that a false statement of the considera-

tion of a mortgage or the creation of a fictitious indebtedness is a badge of fraud. Touching this doctrine it has been said that 'no device can be more deceptive and more likely to baffle, delay or defeat creditors than the creating of incumbrances upon their property by embarrassed men for debts that are fictitious, or mainly so. The false pretense of a debt or the designed exaggeration of one is an act of direct fraud,' so, 'a false recital of consideration in an instrument, in the absence of explanation, justified a finding of fraud, and the misrecital must be intentional and not accidental; and subject to explanation, and that the evil design must be mutual, otherwise the transaction will stand against creditors except as to the excess.' Hawkins v. Alston, 4 Ired. Eq. 145. And it has been held that the taking of a mortgage for a greater amount than is due from one known by the mortgagee to be in failing circumstances and pressed by his creditors is conclusive evidence of fraud. Butts v. Peacock, 23 Wis. 359. And where a part of the consideration for which a chattel mortgage is given is fictitious or fraudulent as to creditors the entire mortgage will be vitiated. State ex rel. v. Hope, 102 Mo. 429 [14 S. W. 985]; Seger v. Thomas, 107 Mo. 635 [18 S. W. 33]; Nat. Tube Works v. Machine Co., 118 Mo. 365 [22 S. W. 947]; Boland v. Ross, 120 Mo. 208, 25 S. W. 524; Ball v. O'Neill, 64 Mo. App. 388."

In State ex rel. v. Hope, 102 Mo. 410, 14 S. W. 985, the Supreme Court of Missouri, reviewing the authorities upon the question now under consideration, said (pages 429, 431, [14 S. W. 990]):

"The general doctrine on this subject, as expressed in Wait on Fraudulent Conveyances (2d Ed.) § 228, is that 'a false statement of the consideration of a mortgage, or of a conveyance or transfer, or the creation of a fictitious indebtedness is a badge of fraud, and is a proper element for the consideration of the jury in determining the bona fides of the transaction. Such a recital does not usually render the instrument void per se, and in some instances the transaction will be allowed to stand for the amount of the consideration given, and will be void only for the excess.' In the same connection the learned author quotes with approval the dicta of Ruffin, C. J., in Hawkins v. Alston, 4 Ired. Eq. (N. C.) 145: 'No device can be more deceptive and more likely to baffle, delay or defeat creditors than the creating incumbrances upon their property by embarrassed men for debts that are fictitious or mainly so. The false pretense of a debt, or the designed exaggeration of one is an act of direct fraud.'

And the learned author sums up by saying, 'it results then from a review of the authorities that a false recital of consideration in an instrument in the absence of explanation justifies a finding of fraud, that the misrecital must be intentional and not accidental, and is subject to explanation, and that the evil design must be mutual, otherwise the transaction will stand against creditors except as to the excess.' * * *

"In Wallach v. Wylie, 28 Kan. 138, it was held as a conclusion of law that, where the larger portion of the indebtedness pretended to be secured by a chattel mortgage was fraudulent, it rendered the whole mortgage utterly void and of no effect. In Butts v. Peacock, 23 Wis. 359, it was held that the taking of a mortgage for a greater amount than is due from one known by the mortgagee to be in failing circumstances and pressed by his creditors is conclusive evidence of fraud. In Brasher v. Jemison [75 Tex. 139] 12 S. W. 809, upon a like issue with the one in hand, the court held that, if the consideration or any part of it alleged to have been paid by T. W. Brasher to J. A. Brasher for the goods was unreal and fictitious, then the transfer would be fraudulent ' ' * * * because the law will not attempt to ascertain what part of the consideration is genuine; there being a part of it unreal and fictitious the entire conveyance is tainted with the fraud; * * * unless it be shown that the amount inserted was done by mistake, or in some way not affecting the fairness or bona fides of the transaction.' And the same court in Freybe v. Tiernan [76 Tex. 286], 13 S. W. 370, affirming the position taken in Brasher v. Jemison, supra, says: 'We are of the opinion that when an insolvent debtor transfers to a creditor property in satisfaction of the debt, and in the conveyance overstates the amount of the indebtedness which purports to be extinguished by the transfer, such false statement, in the absence of some satisfactory explanation, should be held conclusive evidence of fraud.' See also Lehman v. Greenhut [88 Ala. 478] 7 So. 299.

"The doctrine of these authorities has been recognized in this state: Kuykendall v. McDonald, 15 Mo. 420 [57 Am. Dec. 212]; Cordes v. Straszer, 8 Mo. App. 61; McNichols v. Rubleman, 13 Mo. App. 515; Hanna v. Finley, 33 Mo. App. 645. In Kuykendall v. McDonald, supra, it was said the law will not suffer a creditor, although he may have a just demand against his debtor, to use that debt as a screen to protect the debtor's estate from his other creditors when that estate exceeds much in value the amount of the debt; 'when a cred-

itor by fraud will attempt to defeat the claims of other creditors, there is no hardship in postponing his demand, although a just one, to those which he has endeavored to defeat.' In Cordes v. Straszer, supra: 'A conveyance made in good faith is not void, merely because it delays some creditors, or because it is intended to delay them; but a conveyance made in bad faith, by collusion between the debtor and creditor to cover up property, by naming and professing to secure an indebtedness not really existing, is void as to creditors; and the fact that it also names a real, existing indebtedness, and is really made to secure that real debt, will not save the deed.' "

In National Tube Works Co. v. Machine Co., 118 Mo. 375, 376, 377, 22 S. W. 947, 948, the Supreme Court of the state said:

"Questions of fraudulent preferences given by a debtor in failing circumstances to one or more creditors to the exclusion of others usually arise in contests between the creditors themselves. In such contests in order to defeat the preference it must be shown that the preferred creditor was a party to the fraud of the debtor or participated with him in committing it. Fraudulent intent on the part of the debtor alone is not sufficient to defeat the preference. The questions in this case arising on a plea in abatement concern the acts and intent of the debtor alone. The decisions are all to the effect that a conveyance may be fraudulent, though made to secure a bona fide debt. Its character depends upon the intent with which it is made. Dougherty v. Cooper, 77 Mo. 529, and cases cited; Sexton v. Anderson, 95 Mo. 379 [8 S. W. 161]; Craig v. Zimmerman, 87 Mo. 478 [56 Am. Rep. 466]. * * * It is well-settled law that if a part of the consideration for a conveyance is fraudulent or fictitious, as to creditors, the entire transaction will be vitiated. The doctrine was so emphatically announced in State ex rel. v. Hope, 102 Mo. 429 [14 S. W. 985]. The court says: 'If any part of the consideration of the bill of sale was fraudulent and void, it would taint the whole transfer and render such instrument entirely void.' "

In Imhoff & Co. v. McArthur, 146 Mo. page 378, 48 S. W. 456, 457, the Supreme Court said:

"But, if for no other reason, the mortgage must be held fraudulent and void as to plaintiff upon the ground that the mortgage was given and accepted by the mortgagee to secure the payment of about $1,300 in excess of the amount which he must have known was due him at the time of its execution. Under such circumstances the entire mortgage was and is void against creditors. Boland v. Ross,

120 Mo. 208 [25 S. W. 524]; State ex rel. Robertson v. Hope, 102 Mo. 410 [14 S. W. 985]; Baldwin v. Short, 125 N. Y. 553 [26 N. E. 928]; Wallach v. Wylie [28 Kan. 138], supra."

In Bates County Bank v. Gailey, 177 Mo. 203, 75 S. W. 646, 652, the Supreme Court said:

"It is well settled that in case of the conveyance of land with a fraudulent design on the part of the debtor, a creditor receiving the same in security for a bona fide indebtedness will not be affected, although he is aware that the transaction itself hinders or delays other creditors in the collection of their demands against the fraudulent grantor and that such was the purpose of the debtor, provided the creditor does not further participate in such purpose than by taking security for his debt. But upon the other hand, if any part of the debt secured by the conveyance is not bona fide, or does not exist at the time of this conveyance, or the conveyance is made by the debtor for the purpose to hinder, delay and defraud his creditors in the enforcement of their claims and the creditor thus preferred either knew of, or participated in, the purpose of the debtor when the transaction was consummated, it will be held to be fraudulent as to other creditors."

[3, 4] The excess in the $5,000 note above the indebtedness which the bankrupt owed the bank on April 17th, or above that incurred in June, was not in either case the result of inadvertence or mistake. It was put in the note when executed in April, and allowed to remain when the loans were made in June, intentionally. No explanation was given by the president of the bank why or for what reason the $5,000 note was not made for $4,650, or why the chattel mortgage did not recite that it secured the notes the bank already held. Nor did he give any reason for not taking a new chattel mortgage to secure the loan made on June 4th. The only explanation offered was by the bankrupt, who testified that the mortgage was given by him on April 17th for the purpose of hindering and delaying his creditors. He said he told Mr. Harris this was his purpose, and that he proposed at first that the note should be made for $7,000, but that it was finally agreed to make it for $5,000. Mr. Harris denied that the bankrupt told him he was giving the mortgage as a protection against his creditors. He testified he had no knowledge of any such purpose on the part of the bankrupt. The only purpose he had in taking or retaining the $5,000 note and chattel mortgage was, he said, to secure the loans of the bank to the bankrupt. But these

statements do not explain why it was deemed necessary 'to make the note excessive in amount in April or to retain it so in June. The fact that the $5,000 note and chattel mortgage were excessive was a badge of fraud, which required explanation. Lumber Co. v. Mining Co., supra. The bank gave none. The bankrupt did.

After a careful review of the testimony, we are convinced the bank knew the bankrupt was making the note and mortgage excessive and fictitious as a protection against his creditors, and the bank participated in that purpose by acceding to his request. The financial difficulties of the bankrupt still existed on June 4th, and without doubt he had the same object in view when he requested the bank on that day to retain the $5,000 note and chattel mortgage and use them as security for a new loan. The president of the bank certainly knew his purpose, and by retaining the $5,000 note and chattel mortgage as security for new loans of only $2,650 the bank became again a participant with him in his purpose of hindering and delaying his creditors. Under the decisions of the Supreme Court of Missouri above quoted, and upon the facts, the chattel mortgage must be held to be fraudulent and void.

The court below is directed to set aside its order allowing the claim of the bank as a secured claim, and to enter an order confirming the order of the referee disallowing said claim as a secured claim and allowing it as a general claim against the estate of the bankrupt.