### OLYMPIA FREYBE v. PATRICK TIERNAN ET AL.

#### No. 2799.

1. **Maintenance and Education of Minor.**—A mother of limited means supporting her minor children can charge funds belonging to them coming into her hands with reimbursing her for such expenses without the orders of the Probate Court.

2. **Pleadings—Fictitious Debt.**—In an attack upon a conveyance by a failing creditor upon the ground that the named consideration for the transfer was fictitious, such allegation that the debt was fictitious was sufficient to admit testimony to an offset not allowed in the transaction, which if allowed would have reduced the indebtedness below the sum named in the conveyance.

3. **Mistake as to Amount of Indebtedness.**—Should the amount of the debt recited in the conveyance be over stated, not intentionally but on account of a mistake of fact or law, and should at the same time the value of the property conveyed not exceed the amount of the actual indebtedness, the transaction would be valid. In such case there is neither an intent to defraud nor a fraud resulting from a transfer of an excess of value in property over the debt.

4. **Charge.**—See a charge properly refused, but which was sufficient to call the attention of the court to an issue not included in the general charge.

5. **Acquiescence.**—That a son acquiesced in the use of his funds by his mother and failed to demand them will not have the effect to discharge the debt of the mother so receiving funds belonging to her son and using them.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*Hume & Kleberg,* for appellant. — 1.   The charge of the court should be applicable to the case as made by the legal evidence before the jury, and should not submit to the jury issues which do not arise upon the evidence.   The evidence in this case shows that if there was any indebtedness by appellant to C. A. Freybe by reason of the money collected by her in Germany, the same had been forgiven, and was regarded as settled and extinguished by both parties long before C. A. Freybe became financially involved.   Lee v. Boak, 11 Gratt., 182–90; 2 Story's Eq. Jur., secs. 705b, 706, 706a.

2.   A debt may be forgiven by the creditor to the debtor, and an intention to forgive a debt to the debtor, fully acted on, will accomplish that purpose.   Lee v. Boak, 11 Gratt., 182–90; Story's Eq. Jur., secs. 705b, 706, 706a.

3.   The charge of the court was directly upon the weight of evidence and the presumption arising therefrom, and excluded from the jury the question whether or not C. A. Freybe had, at a time when he was entirely free from debt, waived and forgiven any claim he might have had against his mother for his interest in the money collected by her from his grandfather's estate.   Appellant was entitled to have her case submitted to the jury without any intimation from the court as to the putative force of a given fact.   This was not done.   Heldt v. Webster, 60 Texas, 207; Altgelt v. Brister, 57 Texas, 432; Pasture Co. v. Preston, 65 Texas, 448.

4.   If a child has property of his own, a court of equity will charge the expenses of his education and maintenance upon such property, rather than to force them upon a widowed mother.   Schoul. Dom. Rel., 197, 326.

5.   The charge of the court should be confined to the case as made by the pleadings, and should not submit to the jury questions arising upon evidence inadmissible under the pleadings of the parties.   Facts not alleged, although proved, can not form the basis of a judgment.   Loving v. Dixon, 56 Texas, 75; Rusk County v. Tinsley, 42 Texas, 45; Lemmon v. Hanley, 28 Texas, 219; Chrisman v. Miller, 15 Texas, 159; Hall v. Jackson, 3 Texas, 305.

6.   An estoppel, except in cases of trespass to try title, must be specially pleaded.   Banking Co. v. Hutchins, 53 Texas, 67; Dooley v. Montgomery, 72 Texas, 429.

7.   A failing debtor may prefer a creditor and pay his debts by transferring to him property reasonably proportionate to its amount; and it is immaterial that the amount named in the bill of sale making the transfer is reduced by an offset in favor of the debtor, provided the property transferred is in value reasonably proportionate to the sum actually due after allowing the offset.   Edwards v. Dickson, 66 Texas, 614; Schneider v. Samson, 62 Texas, 201; Smith & Co. v. Whitfield, 67 Texas, 125; Ellis v. Valentine, 65 Texas, 532.

*George Mason* and *Howard Finlay*, for appellees.— 1. A court of equity will not charge the expenses of the education and maintenance of a child upon his own property in the hands of a trustee, so as to relieve the trustee from liability to the *cestui que trust*, except in a proper proceeding to which the *cestui que trust* is a party, and then upon proof that the expenses were incurred under proper authority of law, and proof of facts showing that such expenses were necessary, reasonable, and proper, in consideration of the circumstances of the child and the amount of his fortune, of which matters the court must judge after being sufficiently advised to form an intelligent judgment.

This is not a proper proceeding for the adjudication of such questions, and the *cestui que trust* is not a party to it.

The admissions of appellant charge her with liability to her son for the moneys she received in trust for him, while there is no evidence of her ever having been relieved or discharged of such liability, or any part of it. There is no proof of any facts showing what amount, if any, had been expended for education or maintenance of the son, nor from which such amount could be ascertained, nor of facts showing that such expenditures, if any, had been made under legal authority, or were reasonable, proper, or necessary, or had been prudently, discreetly, or honestly made or incurred. Story's Eq. Jur., secs. 1354a–1357.

2. The testimony did not show that there was no fraudulent or intentional concealment by the mother, at the time of taking the bill of sale, of her liability to the son on account of the trust funds received by her, and there was no disputed question of accounts between the parties, and the court did not err in refusing appellant's charge No. 2.

The question before the court was whether the bill of sale was valid, and this necessarily involved the bona fides of the consideration and its adequacy, and this forced the inquiry whether the son owed any part, and if so how much, of the debt to pay which he had transferred the property; and this depended upon whether at the time of the bill of sale he had been allowed by his mother all the credits he was entitled to, for at that time, being insolvent, he could not waive or forgive such credits even if he had wished to.

It was the duty of the mother to have settled her accounts with the son, and ascertained the balance, if any, due her, before taking the bill of sale, and having failed to do this she must abide the consequences of her failure of duty.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by appellant to recover of appellee Teirnan, as sheriff of Galveston County, and the sureties on his official bond, damages for the seizure of a stock of goods, in which she claimed an interest. The goods were levied upon by virtue of a writ of attachment in favor of E. R. Singleton against Charles A.

Freybe, the son of appellant. Tiernan answered among other things that the plaintiff in the attachment suit had given him an indemnity bond, and prayed that he and his sureties on that bond be made parties defendant. Singleton and his sureties appeared and answered, and upon the trial before a jury there was a verdict and judgment for the defendants.

The facts which gave rise to the suit are as follows: Charles A. Freybe, in 1877, being then about nineteen years old, and having had his disabilities of minority removed, borrowed of his mother, the appellant, the sum of $2500, and with it purchased a half interest in a business then conducted by Singleton. He subsequently bought all of Singleton's interest in the business and gave him his note for the purchase money. At the time of the loan from his mother he executed no written evidence of debt; but at a later date, and after some partial payments had been made, executed to her his promissory note for $2200 for the balance then due. On the 23d day of December, 1887, being unable to meet his obligations, and being indebted to Ullman, Lewis & Co. and to Adoue & Lobit as well as his mother, he conveyed to them jointly all his stock of merchandise and certain other personal property in full satisfaction of their claims. It was after this sale that the writ of attachment was levied. The property was sold by the sheriff under the order of the court, and the proceeds were divided between the plaintiff in attachment, Ullman, Lewis & Co., and Adoue & Lobit, from which it would seem that Singleton did not contest the title of these firms to their respective interests in the property. Singleton and his sureties, in their answer to the present suit, alleged that the debt for which an interest in the goods was transferred to Mrs. Freybe was fictitious, and that therefore the sale to her was fraudulent. The testimony of Mrs. Freybe, who was examined on her own behalf, and that of her son, who testified for the defendants, leaves no doubt that the money was lent by her to her son as she claims, and that there remained due upon that particular transaction at the time of the sale the sum of $2195, the amount recited in the bill of sale as the consideration of the conveyance to her. But during the cross-examination of Mrs. Freybe it was disclosed that during the year 1875 her father-in-law in Germany gave her $1800 or $2000 in German money—the German dollar being worth 70 cents of our money. The testimony does not make it clear whether this was given to her alone or to her and to her children. But in the charge of the court it was disregarded and seems to have been treated as a gift to her for her own use. It was further disclosed by her testimony that in the year 1884 she collected in Germany, from her deceased father-in-law's estate, $1800 or $2000 in German money. In one place she testified that this money was inherited by her children, and in another that it belonged to her and her children as heirs of her deceased father-in-law. She further testified that she was in moderate circumstances; that while she had considerable property she was largely in debt,

and that she had spent her son's portion of the money in his maintenance and education.

Under this state of case the court first charged the jury, in effect, that if at the time of the sale of the property in controversy Mrs. Freybe was indebted to her son on account of the money received by her in Germany in 1884, and that she failed to give him credit therefor on her claim against him for the borrowed money, that they should find for defandants, and then proceeded to give the following further instruction: "In determining whether Mrs. Olympia Freybe was indebted to her son for moneys for which he should have had credit on her claim against him, you can not take into consideration any expenses she may have incurred for his maintenance, support, or education during his minority. Parents can not use the money or estate of their children to aid in their raising without the Probate Court authorizes them by special order, and there is no evidence that any such order was made."

In giving the instruction the court evidently acted upon the theory that the only method by which a mother can establish a debt against her child for expenses incurred on account of his maintenance and education is by means of the procedure in the County Court provided by our statutes in relation to guardians and wards. In this view of the law we do not concur. There are cases in which equity recognizes the claim of the mother against her child for reimbursement for expenditures made on account of his support and education; and our courts being courts of equity as well as law, we see no reason why such claim should not be sustained in any case in our courts, when under the evidence adduced a court of equity would have held it valid. At common law, it is the duty of the father to support his minor children, and upon the death of the father that duty devolves upon the widowed mother. If, however, her means are limited and the children have means of their own, their maintenance and education becomes a proper charge against their own estate. Mawbray v. Mawbray, 64 Ill., 383; Wilkes v. Rogers, 6 Johns., 566; Heyword v. Cuthbert, 4 Dev. Eq., 443.

It is a sound principle that the corpus of the estate of an infant should not be entrenched upon for his support and education so long as the income is sufficient for that purpose; but it is held that when the means of the parent are not ample, expenditures by the parent for the support and education of the minor child may be made a charge upon the body of the estate, provided it be so small that the income is wholly inadequate for the purpose. In Re Bostwick, 6 Johns. Ch., 100; Osborne v. Van Horne, 6 Fla., 360.

The evidence upon the question of the mother's ability to support and educate her children, and upon that of the amount of the expenditures made by her on her son's account, was not very satisfactory; but we think it sufficient to go to the jury, and to have demanded a charge in accord-

ance with the principles announced. The charge under consideration was erroneous, and requires a reversal of the judgment.

It is submitted that "the court erred in refusing to give charge No. 2 asked by plaintiff, which was as follows: 'Whether or not any lawful claim existed or exists in favor of Charles Freybe against the plaintiff on account of any money received by her in Germany in 1884, and whether or not any lawful claim existed or exists in favor of the plaintiff against Charles Freybe on account of the support, education, and maintenance of said Charles by plaintiff, and whether or not upon an inquiry into and offsetting of the said claim of the one against the said claim of the other, the balance, if any found, should be in favor of the plaintiff or of the said Charles, are all questions with which you have nothing to do in this case, and you are instructed not to consider them.'"

In support of the assignments relating to this ruling, it is insisted that the pleadings of defendants were not sufficient to admit evidence of the defense that at the date of the bill of sale C. A. Freybe had an offset against his mother which was not credited upon his debt, and that "said pleadings charged only that said debt, for the payment of which said bill of sale was made, was fictitious, had no existence in fact, and that the parties to said bill of sale had combined to defraud the creditors of C. A. Freybe, but in no way apprised plaintiff that defendants relied as a defense upon showing a counter-claim in favor of C. A. Freybe against the plaintiff."

We think, however, it would be a dangerous rule that would require a creditor who attacks a conveyance of his debtor for fraud to state with exactness and particularity the circumstances in which the fraud consists. Transactions of such a character are usually conducted secretly, and the details are known only to the parties immediately concerned. The allegation in the answer that the debt was ficticious we think was sufficient to admit evidence to show that it was in part unreal, and thereby to establish the fraudulent nature of the conveyance.

It is also assigned that the court erred in refusing to give the following instruction as requested by appellant: "If the jury believe from the evidence that C. A. Freybe was indebted to his mother, the plaintiff, after deducting the sum she may have owed him, if any, [in an amount] reasonably equal to the value of the goods sold by him to her, then you are instructed that the plaintiff is entitled to recover the value of the goods so sold to her at the time of their seizure under the writ of attachment."

We think the charge involves a legal proposition which, as applied to every case of like character, is unsound, but that it was probably sufficient to have called the attention of the court to a phase of the case upon which an instruction should have been given. We are of the opinion that when an insolvent debtor transfers to a creditor property in satisfac-

tion of the debt, and in the conveyance overstates the amount of the indebtedness which purports to be extinguished by the transfer, such false statement, in the absence of some satisfactory explanation, should be held conclusive evidence of fraud. Its evident purpose is to obviate any question as to whether the value of the property exceeds the amount of the debt, and it is inconsistent with fair dealing. It was so held at the last term at Tyler in an opinion by the commission which was adopted by this court. Brasher v. Jemison, 75 Texas, 139.

On the other hand, when a creditor accepts from his debtor property in satisfaction of his debt, and the value of the property is more than is fairly sufficient to discharge the obligation, we think the transaction fraudulent in law, whether the taking of the excess was intentional or not. The right of an insolvent debtor to prefer his creditor by a transfer of property to satisfy the debt is limited strictly to a conveyance of so much only as is reasonably necessary for that purpose.

The unpreferred creditors are entitled to subject any surplus that may remain after satisfying such debts as the debtor may determine to prefer, and hence any appropriation by way of preference of more property than is reasonably sufficient to pay the preferred debt is a necessary infringement upon the rights of those who are not preferred. As long as the conveyance is recognized as valid, its inevitable result is to remove the excess beyond the reach of the other creditors, and the parties to the transaction are not permitted to say that they did not intend the necessary consequence of their action. This is the principle of the rule, and it is also supported by sound policy. When an insolvent debtor prefers a creditor he should be required to do it with strict regard to the rights of other creditors. A hope should not be held out that an excessive transfer may be explained by parol evidence. To permit this would be to encourage fictitious transfers under the guise of preferences and to promote fraud.

But the question which is presented by the phase of the case now under consideration is, should the amount of the debt recited in the conveyance as its consideration be overstated, not intentionally but on account of a mistake of fact or law, and should at the same time the value of the property conveyed not exceed the amount of the actual indebtedness, ought the transaction to be held fraudulent? We think not. In such a case there is neither an actual intent to defraud nor is there legal fraud resulting from a transfer of more property than is sufficient to pay the debt. We think the court should have charged the jury in accordance with the law as here announced.

We do not concur in the proposition urged by appellee that a mere acquiescence of C. A. Freybe in the appropriation of his money by his mother, and his failure to demand it, should under the circumstances be considered a discharge of the debt. His acquiescence is proper to be

looked to as evidence in determining whether his mother owed him anything on account of the money received in Germany or not, but it should have no other effect.

We deem it unnecessary to consider the other questions presented.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 25, 1890.