### NORTHERN TEXAS TRACTION CO. v. WEED et al. (No. 11725.)*

Court of Civil Appeals of Texas. Fort Worth. March 19, 1927.

Rehearing Denied May 21, 1927.

1. Street railroads ⚖️117(35)—Whether motorman discovered automobile driver's peril in time held for jury.

In action for personal injury and property damage from collision of an automobile with a street car, evidence *held* sufficient to justify submission to jury of issue of whether the motorman discovered perilous position of automobile driver in time to have avoided the collision.

2. Street railroads ⚖️117(35)—Whether motorman used all means at hand to prevent collision with automobile held for jury.

In action for personal injury and property damage from collision between an automobile and a street car, evidence *held* to authorize submission of issue of whether motorman in exercise of ordinary care consistent with safety of street car and its occupants used all means at hand to prevent the collision.

3. Street railroads ⚖️117(34)—Whether failure of motorman to use ordinary care was proximate cause of collision with automobile held for jury.

In action for personal injury and property damage from collision between an automobile and a street car, evidence *held* sufficient to authorize submission of issue of whether the motorman's failure to exercise ordinary care was proximate cause of collision and consequent injuries.

4. Evidence ⚖️588—Jury is exclusive judge of credibility of witnesses, and may believe testimony of some and discard testimony of others.

A jury is the exclusive judge of credibility of witnesses, and may believe the testimony of one or more of them and discard the testimony of others.

5. New trial ⚖️72—If verdict rendered is against preponderance of evidence, trial court may and should grant new trial.

Although there may be sufficient evidence to require submission of case to jury, yet if ver-

dict rendered is against preponderance of evidence to that degree which shows manifest injustice, trial court may and should grant new trial.

6. Trial ⚖️134—Trial court should not invade province of jury and take from it decision of question properly belonging to it.

Trial court should not invade province of jury and take from it decision of a question which properly belongs to it, nor should he abdicate the functions of his office and permit prerogatives of jury to be perverted to accomplishment of wrong.

7. Appeal and error ⚖️1003—Evidence held not so to preponderate against issue of discovered peril, where automobile collided with street car, as to require reviewing court to set judgment aside.

In action for personal injury and property damage from a collision between an automobile and a street car, evidence *held* not to show such a preponderance against issue of discovered peril as to require reviewing court to set aside judgment based on jury's finding that the motorman discovered perilous position of the driver in time to have avoided the collision.

8. Street railroads ⚖️117(28)—Whether automobile driver was contributorily negligent in not according street car right of way held for jury.

Where plaintiff's automobile collided with a street car at a street intersection, driver thereof *held* not guilty of contributory negligence as matter of law, where ordinance did not require her to stop her automobile because some vehicle was approaching the crossing, and she had a right to assume that the driver of the approaching car would exercise ordinary care to stop in time to avoid the collision.

9. Trial ⚖️350(7)—Submission of issue whether automobile was in position of peril before collision with street car held not objectionable as submission of issue on evidentiary fact.

In action for personal injury and property damage in collision between an automobile and a street car, submission of issue of whether plaintiff and the automobile were in a position of peril before the collision *held* not objectionable as submission of issue of purely evidentiary fact, where jury understood from evidence that question meant whether the driver's perilous position was recognized by the motorman in time to have avoided a collision.

10. Street railroads ⚖️119—Affirmative answer to issue whether automobile driver kept lookout and finding that she did not observe street car held not contradictory.

In action for personal injury and property damage from a collision between plaintiff's automobile and defendant's street car, affirmative answer of jury to special issue whether automobile driver kept lookout for defendant's street car as she approached the street intersection, and finding that she did not observe the street car in time to have stopped her automobile at a safe distance from the tracks, *held* under evidence not contradictory.

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted October 26, 1927.

**11. Appeal and error ⬦1040(16)—Overruling special exception to petition alleging negligence in violation of ordinance held proper, where question of negligence per se was not submitted (Pen. Code 1925, art. 789).**

In action for personal injuries and property damage from collision between an automobile and a street car, overruling special exception to petition alleging defendant's negligence in operating its street car in violation of ordinance limiting rate of speed generally in city to 18 miles an hour *held* not error, in view of Pen. Code 1925, art. 789, where court did not submit question of negligence per se because of violation of ordinance, but submitted only question as to whether it was negligence to operate the street car at speed jury found it was being operated.

**12. Municipal corporations ⬦592(2)—Ordinance limiting speed of vehicles and street cars held not to conflict with statute regulating speed of "motor vehicles" (Pen. Code 1925, art. 789; Rev. St. 1925, art. 6701, § 1, subd. [a]).**

Ordinance of city limiting rate of speed of motor vehicles and street cars to 18 miles an hour *held* not, in view of Rev. St. 1925, art. 6701, § 1, subd. (a), to conflict with Pen. Code 1925, art. 789, providing that operators of motor vehicles shall not within municipalities operate at a greater rate of speed than 20 miles an hour; "motor vehicles" in statute not including street cars.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Motor Vehicle.]

**13. Trial ⬦351(5)—Refusal to submit issue whether automobile driver drove onto tracks in front of street car held not error, in view of issues submitted.**

In action for personal injury and property damage from collision between an automobile and a street car, refusal to submit issue whether plaintiff attempted to drive onto tracks in front of defendant's street car at time when it was unsafe *held* not error, in view of submission of issue as to whether she was negligent in driving on tracks and whether such negligence proximately contributed to the collision.

**14. Trial ⬦351(5)—Refusal to submit issue whether automobile driver saw street car before collision held proper in view of jury's answer to issues submitted.**

In action for personal injury and property damage from collision between an automobile and a street car, refusal to submit issue whether automobile driver saw street car before collision took place *held* not error, in view of jury's affirmative finding on issues whether she kept a lookout and observed the street car in time to have stopped her automobile at a safe distance.

**15. Trial ⬦352(4)—Refusal to submit issue of negligence in permitting minor daughter to drive automobile held proper, in absence of testimony supporting allegations.**

In action by owner to recover for property damage to his automobile, doctor and hospital bills for his minor daughter injured in collision between the automobile and a street car, where defendant tendered issue of plaintiff's negligence in permitting minor daughter to drive his car, in absence of testimony supporting allegations thereof, no issue was raised for submission to jury.

**16. Trial ⬦351(5)—Refusal to submit issue whether removal of person injured to another infirmary was negligence held not error, in view of instruction given.**

In personal injury action, refusal to submit issue whether removal of person injured from one infirmary to another contributed to her injury and was negligence *held* not error, in view of instruction that in allowing damages jury *should not consider injuries or suffering* sustained in removing her from one hospital to another.

**17. Trial ⬦351(5)—Refusal to submit issue whether failure of automobile driver to yield right of way was proximate cause of collision held not error, in view of issue submitted.**

In action for personal injury and property damage in collision of an automobile with a street car, refusal to submit issue whether failure of the automobile to yield the right of way to the street car was proximate cause or contributed to cause the collision *held* not error, where court submitted issue whether she observed the street car in time to have stopped her automobile at a safe distance.

On Motion for Rehearing.

**18. Trial ⬦351(5)—Refusal to submit issue whether driver kept proper lookout held not error, where motorman did not use care after discovering peril.**

In action for personal injury and property damage in collision between an automobile and a street car, refusal to submit issue whether automobile driver kept proper lookout for the street car as she approached the street intersection *held* not error, in view of jury's finding that the motorman did not use due care after discovering peril of the driver to avoid the collision.

Dunklin, J., dissenting.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by R. R. Weed and others against the Northern Texas Traction Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Cantey, Hanger & McMahon, of Fort Worth, for appellant.

George Thompson, Jr., and McLean, Scott & Sayers, all of Fort Worth, for appellees.

BUCK, J. This suit was filed by R. R. Weed, individually and as next friend for his minor daughter, Katherine Marguerite Weed, for damages against the Northern Texas Traction Company, hereinafter called traction company or defendant. For cause of action, plaintiff pleaded: That on October 19

1923, his daughter, a girl of 17 years of age, while returning from a high school football game played at the high school park east of North Main street, in the city of Fort Worth, left the park driving a Cadillac automobile owned by plaintiff R. R. Weed between 5 and 6 o'clock in the afternoon for the purpose of returning home. The automobile was occupied by Miss Weed and by one of the high school teachers and several others, one being a young man from Dallas who had become suddenly sick while the game was in progress and was being taken to a doctor. That while she was going east on North Fifth street, and in attempting, in the exercise of due care, to cross North Main street, the car the daughter was driving was struck by a north-bound street car belonging to the defendant, and the daughter was seriously and permanently injured. It was alleged that the defendant was negligent in operating its street car at a careless, negligent, and excessive rate of speed, to wit, between 40 and 60 miles an hour; that such rate of speed was in violation of an ordinance of the city of Forth Worth limiting the speed to 18 miles an hour; that the operator in charge of the car failed to keep a lookout and failed to sound any warning of the approach of the car; that the operator in charge of the car discovered the perilous position of Miss Weed in time to have stopped the car and avoided the accident in the exercise of ordinary care by use of the means at hand, but he failed to do so. Plaintiff claimed that his automobile was of the value of $3,100, and was totally destroyed, and that he sustained other damages by reason of the accident, such as hospital bills, doctors' bills, etc., to the amount of $1,241. He sued for $11,241 damages in his own behalf and for $75,000 damages in behalf of his daughter.

The defendant's answer consisted of a general demurrer, several special exceptions, a general denial, and several special pleas, as follows:

(a) That plaintiff Weed was guilty of negligence which proximately contributed to and solely caused the collision in question in permitting his young daughter, barely of sufficient age, under the city ordinance of Fort Worth, to drive a high-powered Cadillac automobile on the streets of Fort Worth, she having had theretofore several traffic accidents, and being an inexperienced, unsafe, and careless driver, all of which was known to plaintiff, or in the exercise of ordinary care should have been known to him.

(b) That Katherine Weed was guilty of contributory negligence proximately causing or contributing to cause the collision in question in the following respects: (1) In not having her automobile under control and management as she approached the intersection of North Fifth street. (2) In driving her automobile into North Main street at a high and dangerous rate of speed and at a rate of speed in violation of the laws of the state of

Texas. (3) In failing to look and listen for an approaching street car as she drove into North Main street and without paying any attention to where she was going. (4) In failing to ascertain that she could make the drive and turn to her left in safety as she approached and drove onto North Main street. (5) In driving the automobile onto North Main street and attempting to drive immediately in front of the defendant's north-bound street car and in driving the automobile into the northeast side of the street car after such street car had passed the line of intersection. (6) In being an inexperienced, careless, and reckless driver. (7) In failing to exercise and use ordinary care to use the means at hand to stop the automobile after discovering the approaching street car, it being alleged in this connection that she discovered the approaching street car in time to have stopped or slowed down her automobile in the exercise of ordinary care by the use of means at hand, and that she failed to do so. (8) In failing to yield the right of way to the street car proceeding north along North Main street, it being alleged that the operator of such street car had the right of way, under the city ordinances of Fort Worth, over vehicles going east and west.

The court submitted the case on special issues, the substance of which, with their answers, are hereinafter given: (1) That the motorman was operating the street car at the rate of 30 miles an hour, and that such speed was negligent. (2) That such negligence was a proximate cause of the collision and the injuries in question. (3) That under all the facts and circumstances shown by the evidence, the motorman did not exercise ordinary care to keep a lookout to discover such automobiles as might be approaching defendant's east car track, and that such failure was negligence and was a proximate cause of the collision and injuries in question. (4) That an ordinarily prudent person operating a street car at the time and occasion in question would have sounded a gong at such a distance as would have apprised persons proceeding west on North Fifth street and approaching defendant's east car track of its approach. (5) That Katherine Weed and her automobile was in a position of peril before the collision, and that the motorman operating the street car discovered such peril, and, after discovering it, was guilty of negligence in failing to exercise all the means at hand to prevent the collision and injuries in question, and that such failure constituted the proximate cause of the collision and injuries. (6) That the collision between the defendant's street car and the automobile was not an unavoidable accident. (7) That Katherine Weed was driving her automobile at 16 miles an hour, and that such operation at such speed was not negligence. (8) That Katherine Weed did keep a lookout for defendant's north-bound street car as she approached the

track of defendant at the time of and just prior to the collision. (9) That under all the facts and circumstances shown by the evidence an ordinarily prudent person, operating a Cadillac automobile at the time and upon the occasion in question, would have listened for defendant's north-bound street car as said automobile approached defendant's track at the time of and just prior to the collision, and that Katherine Weed did listen for defendant's north-bound street car at said time and on said occasion. (10) Katherine Weed did not run into, the side of defendant's street car. (11) Katherine Weed suffered injuries as the result of the collision in question and she was entitled to $12,000 damages.

In entering judgment, the court considered and acted upon an agreement between the plaintiff and the defendant, in open court, that the damages to the automobile should be fixed at $1,500, and that other expenses incurred by reason of the accident were of the reasonable value of $621. Therefore the court entered judgment for $12,000 in favor of Katherine Weed and $2,121 in favor of R. R. Weed. From this judgment the defendant has appealed.

## Opinion.

[1] One of the principal questions raised in appellant's brief is as to the submission of the question or the issue of discovered peril appellant vigorously contending that the evidence does not sustain the submission of such question to the jury, nor the answer of the jury thereto. In determining the question as to whether or not the trial court erred in submitting the issue of discovered peril, it is our duty to consider the testimony showing or tending to show that the motorman discovered the perilous position of Miss Weed in time when he, by the use of all the means at hand, and with due regard to his own safety and the safety of the occupants of his car, could have stopped the car in time to have avoided the collision. The motorman, J. B. Verner, testified:

"Yes; I imagine I could have stopped this street car that was in this collision from within 35 to 38 or 40 feet, by applying the air on it. Well, yes, sir; I saw the Cadillac before the accident actually took place. It was east of the car line and was traveling west. At that time it had reached the east edge of the paving on Main street. It was just about even with the edge of the paving. * * * I saw the Cadillac just as it came in line from the corner of the filling station, wherever that point is, east; that is where I first saw it. It was traveling west and it continued in that direction. * *. * When I saw this Cadillac coming, it looked to me like it was going something like 20 to 25 miles an hour, when I saw it coming, and I sounded my gong; I sounded it more than one time. I sounded it several times. I kept sounding it until the collision occurred. Well, yes, sir; when I rang the gong this automobile seemed to change its course—its speed. When

I first rang it the driver was not looking out the way the car was going, or the automobile. There was a lady driving that Cadillac. Yes, sir, I saw her; she was looking back in the back seat of the Cadillac. * * * She came right straight on until she got within about three feet of my car, when she seemed to swerve or cut to the right. Before that time I had done something with reference to stopping my car. I started stopping my car as quick as I saw the automobile driving west toward the street car. I did everything in my power, after I saw that Cadillac headed west and toward the street car, or where the street car would be if it went a few feet further, to stop the street car before the accident took place.

"At the time she turned to the right, the speed of the Cadillac had been diminished very little; it looked to me like it was checked a little. When the collision actually took place this Cadillac, in my judgment, was going somewhere in the neighborhood of 20 miles an hour. When I first saw the Cadillac automobile over there the front wheels of which were about 6 feet from the east curb line of Main street; my street car was about 45 or 50 feet from where the collision eventually occurred. Although I had 45 or 50 feet to stop that car, I could not bring it to a stop before the collision.

When I saw the automobile about 6 or 8 feet east of the curb I put on all of the braking power that I had for approximately 50 feet to try to stop my street car, and after it and the automobile had come into collision, the automobile was knocked or pushed over to the east side of the curb, and the street car then continued to run about 75 feet north of the point of collision. After I went on from the north end of the viaduct up to the scene of this accident, I traveled at just a moderate rate of speed—something like I judge 17 or probably 18 miles an hour. If my car was going 16 or 16½ miles or 17 miles an hour, and I had been running that rate of speed 350 feet, without any power on, and I suddenly saw something in the track that made me want to stop and I used all the means in hand to stop the street car, at that rate of speed it would take as far as that corner post (indicating) to stop the street car. It would take something like that; maybe not quite so far. That would be 10 long steps. Yes, sir, my eyesight is what I use in stopping street cars to judge the distance.

"This particular accident, when I was about 45 or 50 feet from the point of collision, and saw the young lady drive out, and the front wheels of her car about 6 or 8 feet, I put on the air and held it for as long as I could. I held it until I was within about 3 feet of the point of collision. The reason I did not stop this street car quicker was because they pushed over and pushed my hand with the brake over, and released the air. That was about 3 feet before I got to the place of the collision."

L. W. Welch, a witness for plaintiff, testified that at the time of the accident he was employed at the Owenwood filling station at the southeast corner of the intersection of the streets heretofore mentioned, and immediately south of North Fifth street, on which Miss Weed was driving. He was standing in the front doorway of the filling station and noticed the automobile as it

approached the street car track, and, in his opinion, the automobile was about 50 feet therefrom when he first saw it; that the ringing of the bell on the street car attracted his attention and he turned his eyes from the direction of the automobile and towards the street car; that in his opinion the car was running at the rate of 35 miles an hour, the gong being sounded; that subsequently he measured the distance from the place at which the street car was when he first saw it to the place of the collision, and that it was 115 feet. The motorman having testified that he sounded the gong at the time he first discovered Miss Weed's car approaching the intersection of the street, it is reasonable to infer, if the jury believed Welch, as they had a right to and probably did, that the motorman discovered the approach of the automobile at a time when he was at least 115 feet from the point of collision. Welch testified that the car went some 185 feet from the point of collision before it could be stopped. We think this evidence is sufficient to justify the submission of the issue of discovered peril, and there are other bits of evidence tending to show the dangerous position in which Miss Weed was placed and that the motorman had time to stop his car by the use of all means at hand, consistent with the safety of himself and the occupants of the car.

Justice Gaines, in the case of Houston & T. C. R. Co. v. Finn, 101 Tex. 511, 109 S. W. 918, says:

"Being now of the opinion that there was some evidence to justify the jury in finding that the servants of the company discovered that the plaintiff was about to go into a place where he would be in danger of being struck by the cars, in time to have avoided the injury by means within their power, we deem it a profitless task to discuss the question."

[2, 3] Under the third, fourth, and fifth propositions, appellant urges that the answers to special issues Nos. 13 and 14 are not supported by the evidence, and at least are contrary to the great weight and preponderance of the evidence, and that such answers should be set aside and disregarded.

[4] The evidence of Welch tended to prove, if it did not prove, that the motorman of the street car when he was 115 feet from the point of the collision saw Miss Weed approaching the street car track, at a rate of speed, according to different witnesses, of from 5 to 25 miles an hour. The testimony of the motorman in charge of the street car was, in effect, that the sounding of his gong was occasioned by the fact that when he first saw Miss Weed driving the Cadillac automobile she was looking back towards the rear of the automobile, and, that the automobile proceeded straight on until it got within about 3 feet of the street car, during all of which time the motorman was ringing his bell or gong, and, as he states, using every endeavor to stop the street car. This

evidence is sufficient to establish the fact that when the street car was within 115 feet of the point of collision and moving at a rate of speed of approximately 30 miles an hour, the motorman observed the automobile of Katherine Weed when same was approximately 40 feet from the car track, and he further saw that the driver did not observe the approach of the street car and was unaware of said approach, and, therefore, said automobile and its occupants were in a perilous position, because otherwise the motorman would not constantly have sounded his gong up to the very time of the collision, and put on his air, doing everything he could to try to stop the street car, as he says he did, but concerning which the jury thought otherwise. The motorman testified that a car moving at the rate of 30 or 40 miles an hour, in his opinion, could have been stopped within a distance of 60 or 65 feet at that rate of speed; that it would take some 50 or 55 feet to stop a car going at the rate of 35 miles an hour, etc. We are not prepared to say that the evidence is not sufficient to sustain the finding of the jury in answer to issue No. 13, although there is some testimony tending to show that the motorman did not discover or realize the perilous position of Miss Weed in time to have stopped his car before the collision. But a jury is the exclusive judge of the credibility of witnesses and may believe the testimony of one or more witnesses and discard the testimony of other witnesses.

[5, 6] We recognize the rule invoked by appellant, as stated in Choate v. S. A. & A. P. R. Co., 90 Tex. 82, 36 S. W. 247, 37 S. W. 319, that a different rule applies to the granting of new trials by the trial courts and by Courts of Civil Appeals; that although there may be sufficient evidence in a case to require the court to submit the case to the jury, yet if the verdict rendered thereon is against the preponderance of the evidence to that degree which shows that manifest injustice has been done, the trial court may and should grant a new trial. The court should not invade the province of the jury and take from it the decision of a question which properly belongs to it; neither should he abdicate the functions of his office and permit the prerogatives of the jury to be perverted to the accomplishment of wrong.

[7] We do not think that the evidence in the case shows such a preponderance against the issue of discovered peril as to require us to set aside the judgment based, in part at least, on the finding of the jury that the motorman discovered in time the perilous position of Miss Weed for him, by the use of all means at his command consistent with the safety of himself and the passengers on the street car to have stopped the car in time to have avoided the collision. See Houston E. & W. T. R. Co. v. Kopinitsch, 114 Tex. 267, 268 S. W. 923, by the Galveston Court of Civil Appeals. In the opinion of the Court of

Civil Appeals, 282 S. W. 885, after questions had been certified to the Supreme Court and answers thereto made, Judge Graves, of the Galveston Court, said:

"The legal sufficiency of the evidence in the case to raise for the jury the issue of discovered peril having been a matter of debate among the members of this court in this and other cases (see T. & N. O. R. Co. v. Wagner [Tex. Civ. App.] 262 S. W. 902), we heretofore, deeming that question the major one here, on February 21, 1924, under a full statement of the evidence in the record affecting the matter, certified it to the Supreme Court for its determination. That court by its judgment and opinion, copy of which was filed on * * * March 30, 1925, answered that the evidence did raise that issue for the jury."

This case involved the question of discovered peril on the part of the fireman of an engine attached to a train, and on the side of the engine nearest to an automobile in which the plaintiffs were riding. He testified that he observed this automobile when the train was about one-fourth of a mile or less from the crossing; that the train was running about 40 miles an hour and he saw the automobile at a point 60 feet from the crossing; and that he saw the driver pull the car around and start towards the crossing; that he did not tell the engineer of the presence and the perilous position of the automobile; and that the engineer could not see it for himself. The Supreme Court held upon this issue as follows:

"Under this evidence could it be said that it would have been reasonably apparent to a person of ordinary prudence in the use of ordinary care situated as was the fireman that those in the automobile were not aware of the approach of the train? If it could, it would be within the province of a jury to say whether it was apparent to the fireman that the driver of the automobile was ignorant of the fact that the train was approaching the crossing."

[8] The assignments are overruled. And also the sixth proposition, which invokes the question as to the failure of the court to grant a peremptory instruction upon the conclusion of the testimony, inasmuch as it is claimed that the evidence does not raise the question of discovered peril. It is further urged, inasmuch as the ordinance of the city of Fort Worth accord to those traveling north and south on its streets the right of way as against those going east and west, that Miss Weed was guilty of contributory negligence as a matter of law in not according to the street car the right of way on North Main street. Miss Weed testified that as she approached North Main street she looked both to the north and south and did not see any car approaching; that she thought she could cross the tracks without any danger from any street car or other vehicles going north and south when she entered North Main street. While it may be said that it was the duty of Miss Weed as she approached North Main street, in the exercise of due care for herself and the other occupants of her automobile, to look both north and south to determine whether there was any danger of a collision between her automobile and vehicles going north and south, yet it does not require her to stop her car because some vehicle is approaching the crossing, and at the time she attempts to cross, such vehicle or street car is at such a distance from the intersection as to make it reasonably probable, in the exercise of ordinary care by the one driving or operating it to stop such vehicle in time to avoid a collision; and she had a right to believe and assume that the driver or operator would exercise ordinary care to stop in time to avoid the collision.

[9] We do not think that the submission of the issue as to whether Miss Weed and the automobile she was driving was in a position of peril before the collision with the street car and the automobile was objectionable, on the ground that it was a submission of an issue on a purely evidentiary fact. The jury found in answer to a special issue that Miss Weed was in a perilous position before the collision and that the motorman discovered such perilous position, and that after discovering the same he did not exercise ordinary care and did not use all the means at hand, consistent with the safety of the street car occupants and himself, to prevent the injuries in question. Therefore the issue complained of must be interpreted in view of the other questions submitted and answered. If the form of submission of this question is objectionable, the defendant below did not assail it on that ground, nor did it offer any issue containing the question involved couched in a different form. Appellant urges that it is apparent that Miss Weed was in a perilous position immediately before and at the time of the collision, because she was injured, and that therefore the submission of this issue was upon a question not controverted. The jury evidently understood the question to mean, was Miss Weed in a perilous position and was said perilous position seen and recognized by the motorman at a time prior to the collision when the motorman in the exercise of due care should have prevented the collision. Therefore we overrule assignments 7 and 8. Furthermore, we do not think there is any merit in propositions 9, 10, 11, 12, 13, 14, and 15, and they are overruled.

[10] Under the sixteenth proposition complaint is made that the answer to special issue No. 19, which was, did Miss Weed in operating the automobile keep a lookout for defendant's north-bound cars as she approached the track of defendant at the time of the collision, to which the answer given was "yes," and the answer to issue No. 26, wherein the jury found that she did not observe defendant's car in time to have stopped the

automobile a' safe distance from defendant's track, are contradictory. Appellant urges that if Miss Weed kept a lookout for defendant's car and listened therefor she must necessarily have observed said car in time to have stopped her car before it got onto the track or came in collision with the street car. The evidence of witness Welch shows: That when he first observed Miss Weed's automobile he was standing in front of the filling station and about 50 feet from 'the automobile. That he heard the bell ring or gong sound on the street car and turned in that direction. The street car at that time was some 115 feet south of him, Miss Weed's car being about 50 feet north or northeast of him. That he saw Miss Weed glance in a' southerly direction, from which' direction the evidence shows the street car was coming. That there were some columns supporting the covering to the driveway of the filling station. In merely glancing in a southerly direction it is possible that Miss Weed did not see the street car because of the obstruction of the columns, or because the car was out of her line of vision. If her car was in a position on North Fifth street, back of the front of the filling station, so that she could not see to the south and see the car approaching, where it was at that moment, she might have exercised due care in looking to the south, because her car continued to move, and, in the exercise of due care, she would have had to look forward in attempting to drive across North Main street. We do not think that the answers to the issues are necessarily contradictory, and·think that they may be reasonably reconciled.

[11, 12] The eighteenth proposition is directed to the action of the trial court in overruling a special exception urged by the defendant below to that part of plaintiff's petition pleading that the defendant was guilty of negligence in operating its street car in violation of an ordinance of the city of Fort Worth regulating the speed of vehicles and street cars used on the streets. The ordinance was introduced, which limits the rate of speed generally in the city to 18 miles an hour, and on certain streets limits the speed to 12 miles an hour. Appellant urges that the ordinance is in conflict with chapter 155 of the General Laws of the Thirty-Eighth Legislature, Acts of 1923, which is article 789 of the Revised Statutes of 1925 (Pen. Code). This act in part provides:

"Every person operating or driving a motor [car] or other vehicle upon the public highways of this state, shall operate or drive same in a careful and prudent manner, and at a rate of speed not greater than is reasonable and proper having due regard for the traffic and use of the highway; and no person shall operate, drive or pass any motor or other vehicle, person or thing· on any public highway of this state at such rate of speed as to endanger the life or limb of any person, or the safety of any property; provided that it shall be unlawful for any person to operate or drive any motor or other vehicle upon the public highways of Texas at a rate of speed in excess of thirty-five miles per hour; and provided further, that in any event, no person shall operate or drive a motor or other vehicle within the corporate limits of an incorporated· city or town, or within or through any town or village not incorporated within this state, at a greater rate of speed than twenty miles per hour; provided further, that the regulation with regard to speed as set forth in this section shall not be held to apply to fire patrols or motor vehicles operated by the fire department of any city, town or village within this state responding to calls, nor to police patrols, ambulances or physicians responding to emergency calls."

It will be noted that the act itself limits the rate of speed in an incorporated city or town to 20 miles an hour. The jury found that the car was being operated at 30 miles an hour, and certain evidence would have supported a finding that it was being operated at a much .higher rate of speed. No instruction was given based on negligence per se, by reason of the defendant's motorman operating the street car at such a speed as would be in violation of the ordinance. As said by McQuillan on Municipal Corporations, vol. 2, p. 1421, § 648:

"Morality and good order, 'the public convenience and welfare, may require many regulations in crowded cities and towns, which the more sparsely settled portions of the country find unnecessary. And it is for legislative discretion to determine, within the limitations of the constitution, to which extent city or town councils shall be invested with the power of local legislation."

In view of the fact that the state law prohibits the driving of motor-drawn vehicles or other vehicles along the streets of a city such as Fort Worth at a greater speed than 20 miles an hour, and in view of the fact that the court did not submit the question of negligence per se, by reason of the violation of the ordinance pleaded and introduced in evidence, but merely submitted the question as to whether, under all the circumstances, it was negligence on the part of the motorman to operate his car at the speed the jury found he was operating it, we think no reversible error is shown by the overruling of the exception to such pleading. Appellee urges that the state law does not govern the speed of street cars, but only motor vehicles, and that "motor vehicles,"· as used in the act, refers to automobiles, motorcycles, and vehicles of that class. It will be noted, moreover, that the caption to the act regulating the speed of motor vehicles does not include the term, "other vehicles." Appellee cites an opinion by the Attorney General's office that the term "motor vehicles" does not include a street car. Article 6701, § 1, subd. (a) Rev. St. 1925, is as follows:

"Section 1. Whenever used in this act the following terms shall have the meaning ascribed to each as follows:

"(a) 'Motor vehicles' shall include all vehicles propelled otherwise than by muscular power, except motorcycles and vehicles that run exclusively upon tracks or rails."

Therefore it appears there is no conflict between the ordinances pleaded and the state law.

[13] The trial court refused to submit to the jury defendant's special requested issue No. 10, as follows:

"Did the plaintiff Katharine Weed attempt to drive onto defendant's track and in front of defendant's north-bound street car at a time when it was unsafe for her to do so?"

It then submitted the issue as to whether such conduct, if any, was negligence on her part and whether such negligence, if any, proximately contributed to cause the collision in question. It urges, under the case of Fox v. Hotel Co., 111 Tex. 461, 240 S. W. 517, that the defendant was entitled to have submitted separately, distinctly, and affirmatively each ground of defense as pleaded by it. It is evident that when Katherine Weed attempted to drive onto defendant's track and in front of defendant's north-bound street car it was unsafe for her to do so. The facts and circumstances all establish this to be true. Miss Weed might have exercised due care in attempting to drive across North Main street, as the jury found she did, and yet have been injured. The court is not required to submit as an issue a question of fact determined one way by all of the testimony.

[14] Another issue tendered was:

"Did the plaintiff Katharine Weed see defendant's north-bound street car before the collision took place between the street car and the Cadillac automobile she was driving?"

She testified that she saw the street car immediately before the collision occurred and that at that time she attempted to turn her car north on Main street. The court submitted to the jury the questions whether or not Miss Weed kept a lookout and whether she listened for the street car, and whether or not she observed the street car in time to have stopped her automobile a safe distance from appellant's track, by the exercise of ordinary care on her part, and whether or not she ran into the side of appellant's street car, and whether or not she had her automobile under control and management as she approached appellant's street car track, and upon all of these issues the jury found in favor of Miss Weed. We do not find any error in the refusal of the court to submit this issue. We overrule this assignment and also the assignments under the twenty-first and twenty-second propositions. We do not think there was any error in refusing the tendered

issues mentioned under the twenty-third, twenty-fourth, and twenty-fifth propositions.

[15] As a defense to that part of plaintiff's cause of action in which plaintiff R. R. Weed sought to recover damages for his automobile, doctors' bills, and hospital bills, the defendant pleaded that Weed was guilty of negligence in allowing his minor daughter to drive the car upon the occasion in question, in that she was an inexperienced, unsafe, careless, and reckless driver, all of which facts were within his knowledge. Appellant, in its pleadings, tendered the issue of Mr. Weed's contributory negligence in permitting his minor daughter to drive the Cadillac car in question, and assigns error to the failure of the court to submit the same. It cites no testimony tending to support the allegations that she was careless, reckless, and an inexperienced driver, and in the absence of such negligence, evidently no issue was presented for the jury on that question.

[16] Appellant submitted the issue as to whether or not the removal of Miss Weed from one infirmary to another on the morning of October 21st contributed to cause any additional or "approximate" injury or suffering to her, and as to whether the act and conduct on the part of plaintiff R. R. Weed in causing his minor daughter to be moved was negligence. The court did instruct the jury that in allowing damages, if any, for the injuries to Miss Weed, that they should not take into consideration any injury or suffering sustained by Miss Weed in her removal from one hospital to another. We think that the question involved in the issue tendered was sufficiently submitted by the court in the instructions given.

[17] The defendant tendered the following issue, which was refused:

"Was the failure on the part of the plaintiff Katherine Weed to yield the right of way on the occasion in question to the north-bound street car a proximate cause or did it proximately contribute to cause the collision in question?"

The court did submit to the jury the issue as to whether Miss Weed observed defendant's north-bound street car in time to have stopped her automobile a safe distance from said street car. The jury answered the question in the negative. Appellant relies on an ordinance of the city of Fort Worth to the effect that:

"All vehicles and street cars going in a northerly or southerly direction shall have the right of way over all vehicles and street cars going in an easterly or westerly direction."

Appellee urges that the city ordinance above quoted has been superseded by subdivision E of article 801 of our Penal Code under "Law of the Road," which reads as follows:

"Except where controlled by such ordinances or regulations enacted by local authorities, as are permitted under the law, the operator of a vehicle approaching an intersection on the public highway shall yield the right-of-way to a vehicle approaching such intersection from the right of such named vehicle."

It is also urged that the expression, "except where contrólled by such ordinances or regulations enacted by local authorities," refers to and is limited by section L of the said article, which, in effect, provides that cities of 10,000 inhabitants or over may provide by ordinance for the regulation of traffic in passing safety zones, etc. But be that as it may, we think the court guarded the rights of defendant in the issues that were submitted and answered with respect to Miss Weed's contributory negligence, and the trial court did not commit reversible error in refusing to submit the issue tendered.

There are other assignments and propositions in the brief, and we have carefully examined the same, but find no reversible error. Therefore all assignments of error are overruled, and the judgment is affirmed.

#### On Appellant's Motion for Rehearing.

Appellant gives 113 reasons why we erred in our original opinion. Most of those are but reiterations of assignments discussed and disposed of by us, but some of them were not specifically or fully discussed in the original opinion, and we will now discuss further one of them.

[18] One of the issues presented is that the trial court erred in failing to submit the tendered issue as follows:

"Did the plaintiff Katherine Weed keep a proper lookout for defendant's north-bound car as she approached the track of defendant at the time of and just prior to the collision?"

Then the questions were asked, if such failure, if any, was negligence, and whether such negligence, if any, was the proximate cause of the collision. The court did submit the issue as to whether Katherine Weed kept a lookout, and it was answered in the affirmative. Since the jury found the motorman did not use all the means at hand, consistent with his own safety and the safety of his passengers, after he discovered the dangerous position in which Katherine Weed was placed, to avoid the collision, the majority are of the opinion that it becomes immaterial whether she kept a proper lookout or not. The jury having found that the motorman was guilty of negligence after discovering the perilous position of the driver of the Cadillac car, we do not think any material error was committed, if any at all, in failing to give the tendered charge. Miss Weed might have used ordinary care to keep a lookout, which was all the care incumbent upon her, and yet not have seen the approaching car,

though it was approaching along an unobstructed street. As stated in our original opinion, at the time she looked south, it may have been that the view of the approaching car was obstructed by the pillars in front of the filling station, and that the car was so far up the street south that she could not see it, or for some other reason other than negligence she did not see it. If so, and she used ordinary care in approaching the track, as the jury found, she would not be guilty of contributory negligence. Inman et al. v. St. Louis S. W. R. Co., 288 S. W. 150, by the Commission of Appeals; Smith v. Galveston-Houston Electric R. Co., 277 S. W. 103, by the Commission of Appeals.

In the opinion of the majority, the motion for rehearing should be overruled, and it is accordingly ordered.

DUNKLIN, J. (dissenting). One of the defenses specially pleaded by the defendant company was Miss Weed's alleged failure before reaching the crossing to keep such a lookout as a person of ordinary prudence would have kept under the same circumstances to discover whether or not a street car was approaching the crossing, and but for which failure the accident would not have happened. Special issue No. 19 in the court's charge was the only one in which the court attempted to submit that issue to the jury. That issue reads as follows:

"Under all the facts and circumstances shown by the evidence, did Katherine Marguerite Weed, in operating the Cadillac automobile, at the time and upon the occasion in question, keep a lookout for defendant's north-bound car, as she approached the track of defendant and at the time of and just prior to the collision? Answer: Yes."

In the opinion of the writer such submission of the issue was clearly subject to the objection urged to it by defendant at the time, to the effect that it failed to require a finding as to whether or not in approaching the crossing Miss Weed kept such a lookout for the approach of a street car to the crossing as a person of ordinary prudence would have kept under the same circumstances. It will be observed that the only finding required by special issue No. 19 was whether or not, as she approached the crossing, Miss Weed kept a lookout for a street car on defendant's track. The jury could have made an affirmative finding on that issue if any kind of lookout was kept, regardless of whether or not it was such as that a person of ordinary prudence would have kept under the circumstances. The objection was specially pertinent in view of Miss Weed's statement that she looked down the track to the south before she reached the crossing as far as she could see, and that the next time she looked south she was within 10 feet

of the track and then saw the street car approaching so near that she was unable to avoid the collision, and her further testimony that, "I guess if I had looked after I drove out there to where I could see down Main street, if I had looked at any time after I took the first glance, and up until I got within 10 feet of the track, I guess I could have seen the street car. There was nothing in the street there to have prevented me from seeing it"—and in view of other testimony tending to show that as she approached the crossing she was engaged in a conversation with other persons riding in the rear of the car towards whom her face was turned at the time.

Hence the writer is of the opinion that the assignments of error addressed to the insufficiency of special issue No. 19 for the reasons already noted and to the refusal of the court to submit appellant's requested special issue, or the same issue in some proper form on the same defense, should be sustained. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517, and authorities there cited; Armour v. Morgan, 108 Tex. 417, 194 S. W. 942; Campbell v. Johnson (Tex. Com. App.) 290 S. W. 526; Gammage v. Gamer Co. (Tex. Com. App.) 213 S. W. 930. And if the requested instruction was not in proper form, nevertheless the same operated as a request for a proper submission of the same issue. Kirby v. Estill, 75 Tex. 484, 12 S. W. 807; Gulf, C. & S. F. R. Co. v. Hodges, 76 Tex. 90, 13 S. W. 64; Freybe v. Tiernan, 76 Tex. 286, 13 S. W. 370; Tex. Ref. Co. v. Alexander (Tex. Civ. App.) 202 S. W. 131.

By proper assignments of error appellant presents the contention that the judgment of the trial court cannot be supported by the findings of the jury in answer to special issues Nos. 12, 13, and 14, to the effect that the motorman in charge of the street car, just prior to the collision, discovered Miss Weed's perilous position in time to have avoided the collision by the exercise of ordinary care, and that his negligence in failing so to do was the proximate cause of the collision, since such findings are in irreconcilable conflict with the findings in answer to issues Nos. 4, 5, and 6, to the effect that the motorman did not exercise ordinary care to keep a lookout to discover the approach of the automobile to the crossing in question, and that such failure on his part was a proximate cause of the collision and the injuries in question resulting therefrom.

Issues 12, 13, and 14, referred to above, with their answers, are as follows:

"12. * * * Did the motorman operating the street car in question discover the perilous position, if any, of Katherine Marguerite Weed and the car she was driving? Answer: Yes.

"13. * * * Did the motorman operating the street car in question after discovering, if he did, the perilous position, if any, of the said Katherine Marguerite Weed and said automobile, in the exercise of ordinary care, consistent with the safety of said street car and its occupants, use all the means at hand to prevent the collision and injuries in question? Answer: No.

"14. * * * Was such failure, if any, the proximate cause of the collision and injuries in question? Answer: Yes."

And issues 4, 5, and 6, with their answers, are as follows:

"4. Under all the facts and circumstances shown by the evidence, did the motorman in charge of defendant's north-bound street car, at the time and upon the occasion of the collision in question, exercise ordinary care to keep a lookout to discover such automobile as might be approaching defendant's east car track? Answer: No.

"5. * * * Was such failure, if any, negligence, if any, as that term is defined to you? Answer: Yes.

"6. * * * Was such negligence, if any, a proximate cause of the collision and the injuries in question? Answer: Yes."

The writer is of the opinion that those assignments should likewise be sustained. The only means by which the discovery of the approaching car could have been made would have been by keeping a lookout; and the finding of the jury that the motorman did not keep such a lookout is equivalent to a finding that he did not see the Cadillac car in time to avoid the collision, by the exercise of ordinary care. Manifestly, that finding was in conflict with the findings in answer to issues 12, 13 and 14, noted above, to the effect that he did make such discovery in time to avoid the accident by the exercise of ordinary care. Moore v. Moore, 67 Tex. 293, 3 S. W. 284; Northern Texas Traction Co. v. Armour (Tex. Com. App.) 288 S. W. 145; Williams v. Zang (Tex. Com. App.) 279 S. W. 815; Stewart v. Schaff (Tex. Civ. App.) 269 S. W. 135.

In Moore v. Moore, 67 Tex. 296, 3 S. W. 284, 286, our Supreme Court, speaking through Justice Gaines, said:

"The verdict must find all the issues made by the pleading which does not admit of mistake. It should be the end and not the continuation of the controversy."

If the jury had found that Miss Weed failed to keep such a lookout for the approach of a street car as a person of ordinary prudence would have kept under the same circumstances, and that but for such failure the collision would not have occurred, such a finding would have precluded a recovery based on one or both of the further findings to the effect that the motorman was guilty of negligence in operating the street car at the rate of 30 miles an hour, and that he was also guilty of negligence in failing to sound the gong as he approached the crossing at such a distance as would have apprised Miss

Weed of the street car's approach, and that each of such acts of negligence was a proximate cause of the collision and the resulting injuries.

Hence, with such a finding of contributory negligence on the part of Miss Weed, the only ground upon which a recovery could be based would be a finding of negligence on the part of the motorman after he discovered the perilous situation, and which negligence was the proximate cause of the accident.

Accordingly, the writer is of the opinion that appellant's motion for rehearing should be granted, and that the judgment of the trial court should be reversed and the cause remanded.